THOMA *v.* TRACY MOTOR SALES, INC.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   The Supreme Court takes the view of disputed facts favorable to plaintiffs which the jury would have had a right to take had the trial judge not directed a verdict for defendant.

2. TROVER AND CONVERSION—DEFINITION OF CONVERSION.
   Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

3. SAME—GARAGE KEEPER'S LIEN—SALES—ACT OF DOMINION.
   Sale of damaged automobile by garage man with whom it had been left for repair, repairs subsequently stopped, and storage charges permitted to accumulate for 2 years, conducted in strict compliance with the garage keeper's lien statute, without any steps having been taken by owners either to dispute or pay the charges, stop the sale, or make a demand for the car, constituted an act of dominion over the car permitted by statute and was not wrongfully exerted, hence, not an act of conversion (CL 1948 and CLS 1956, §§ 570.301–570.303).

4. SAME—SALES.
   Liability for conversion does not arise upon part of one who sells a chattel if he is privileged to dispose of it.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted June 7, 1960. (Docket No. 9, Calendar No. 48,058.) Decided July 11, 1960.

Case by Ross B. Thoma and Marie B. Thoma against Tracy Motor Sales, Inc., a Michigan corporation, for conversion of automobile. Directed verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 886.
[2] 53 Am Jur, Trover and Conversion § 24.
[3] 24 Am Jur, Garages, Parking Stations, and Liveries § 49.

*Charles S. Toy,* for plaintiffs.

*Dykema, Jones, Wheat, Spencer & Goodnow,* for defendant.

EDWARDS, J. This is a suit for conversion of a new Lincoln automobile. Plaintiffs are the owners of the car and defendant is the automobile sales and service agency which sold the car and with whom plaintiffs had left the car for repairs following an accident. After the taking of proofs, the trial judge directed a verdict for defendant. Hence, in reciting the facts where they are in dispute, we take the favorable view toward plaintiffs' evidence which the jury would have had a right to take had the case been submitted. *Gapske* v. *Hatch,* 347 Mich 648; *Miller* v. *Pillow,* 337 Mich 262.

In April, 1953, Ross and Marie Thoma, plaintiffs herein, purchased a 1953 model Lincoln from defendant Tracy Motor Sales for $5,000. Plaintiffs had difficulties with the brakes on the Lincoln and several times had it back in defendant's garage for repairs of the brakes.

On December 27, 1953, Ross Thoma was driving the Lincoln when he had an accident. Mr. Thoma testified at trial that subsequent thereto, "We telephoned Tracy, and they went out and got it [the Lincoln]." He also testified that a few days later Tracy called him and gave him an estimate of $800 to $900 on repairs and "I said, 'Okay. Go and fix it up.' "

From other undisputed testimony, it appears that plaintiffs' insurance company's agent went to the Tracy garage and approved the estimate. Tracy then had the Lincoln taken to Jim Arnold's Collision Shop where they customarily had their body work done.

Arnold started on the repair work but then had several visitors who wanted to inspect and photograph the brakes on the Lincoln. It developed that plaintiffs had filed suit against Tracy Motor Sales and the Ford Motor Company, claiming that brake failure on the Lincoln had occasioned the accident.

On discovering this, Mr. Lusk, an employee of defendant, called the Thoma home. He testified:

"I called and talked to Mrs. Thoma. She said that she was Mrs. Thoma. And, I asked to speak to Mr. Thoma. She said that he had a jaw injury, or something. I asked her if they would sign the repair order at that time to go ahead and complete the car. She told me that they would not sign the repair order, and they didn't want anything further to do with the car. They had turned it over to their lawyer."

Lusk also testified that on his reporting this conversation to defendant's general manager, he was told to stop work on the car. This was done.

The damaged Lincoln stayed at the Arnold Collision Shop for 2 years. Meantime, defendant Tracy Motor Sales sold out its agency. Finally, in 1956, Arnold called Thoma's home and talked to someone who said he was Thoma. Arnold testified as follows as to this conversation:

"I asked him, was he the owner of this Lincoln car that I had gotten from Tracy Motors, and he said, 'Yes.' He said, 'How come you have the car?' And, so I told him that I had the car, that I did repairs for Tracy Motors, and that the car had been left there, and that I had been ordered to stop repairs on it, and that Tracy Motors at that time had sold out, and I had called Tracy Motors; and at that time Mr. Tracy, he was not in town, and I could not get ahold of Mr. Tracy. And Mr. Adams, who took over Tracy's,—no one knew what to do with the car. Well, I had stored it for 2 years myself. So,

I told Mr. Thoma, what should I do with the car? He said, 'I don't know. You will have to call my attorney.' So, I called Mr. Toy, and he said—"

The objection which interrupted this testimony was based on the hearsay rule and the fact that the Mr. Toy referred to was deceased. The court overruled the objection, and appellants present this ruling as 1 of their questions upon appeal. However, we find no basis for deciding this evidentiary question. Arnold's testimony was quite indefinite as to whether the instructions to which (over objection) he testified were given by Mr. Toy or Mr. Thoma. Mr. Thoma's testimony as to the conversation in question (which in the present posture of the case we accept as true) was:

" 'Well, I don't want the car until you fix it up all complete with the brakes and everything.' I says: 'Well, you should see my lawyer.' I says: 'There is a lawsuit pending.' "

It is undisputed that Arnold did talk to Toy. And there is no evidence in this record that he received any instructions as to disposition of the car or payment of his charges.

Thereafter Arnold had the Lincoln sold at public auction under the mechanic lien law\* for repairs and storage totaling $860. Plaintiffs concede that they "were duly and properly notified of the proceedings which resulted in their car being sold."

Appellants claim that this record presents disputes of fact as to whether or not plaintiffs in so many words abandoned the Lincoln. This may be true.

Much more to the point, however, is the fact that the testimony relied upon by plaintiffs never es-

---

\* See citation of mechanics' lien statute applicable to garage keepers, p 439.—REPORTER.

tablished a prima facie case of conversion of the automobile by defendant.

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Nelson & Witt* v. *Texas Co.*, 256 Mich 65, 70.

1 Restatement, Torts, § 223, states the ways in which a conversion may be committed:

"A conversion may be committed by

"(a) intentionally dispossessing another of a chattel,

"(b) intentionally destroying or altering a chattel in the actor's possession,

"(c) using a chattel in the actor's possession without authority so to use it,

"(d) receiving a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it,

"(e) disposing of a chattel by a sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,

"(f) misdelivering a chattel, or

"(g) refusing to surrender a chattel on demand."

However, liability for conversion does not arise under terms of this section if the actor is privileged to dispose of the chattel. 1 Restatement, Torts, § 222.

The only act of dominion over the Lincoln of which plaintiffs now complain is the mechanic's lien sale. No demand for the car was ever made up to the time of sale, as far as this record discloses. Plaintiffs admit proper notice of the sale, and the record is devoid of any evidence that they took any steps either to dispute or pay Arnold's charges or to stop the sale.

The sale was conducted in strict compliance with

the provisions of the garage keeper's lien statute (CL 1948 and CLS 1956, §§ 570.301–570.303 [Stat Ann 1952 Rev §§ 9.1711–9.1713]) for the purpose of satisfying Arnold's long-standing charges. Since Arnold thereby was exercising a statutory right concededly within the statutory terms, we cannot regard the sale as an "act of dominion wrongfully exerted." *Nelson & Witt* v. *Texas Co., supra.*

It is difficult to treat a $5,000 chattel as cavalierly as plaintiffs have done on this record and subsequently recover its value. We affirm the trial judge's directed verdict, on the ground that plaintiffs failed to offer prima facie proof of conversion of the Lincoln by defendant.

Affirmed. Costs to appellee.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Kavanagh, and Souris, JJ., concurred.