**MELEA LIMITED, a Gibraltar corporation, and Plastic Molded Technologies, Inc., a Michigan corporation, Plaintiffs,**

v.

**QUALITY MODELS LIMITED, an Ontario corporation, Defendant.**

No. CIV.A. 03–71338.

United States District Court, E.D. Michigan, Southern Division.

July 30, 2002.

---

Gordon S. Gold, Barry R. Powers, Seyburn, Kahn, Ginn, Bess & Serlin, PC, Southfield, MI, A. Michael Palizzi, Marjory G. Basile, Miller, Canfield, Paddock & Stone, PLC, Detroit, MI, for Plaintiff.

Ernie L. Brooks, Robert C.J. Tuttle, John E. Nemazi, Robert C. Brandenburg, Brooks & Kushman, PC, Southfield, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

### INTRODUCTION

A patent holder for plastic injecting molding process brings claims against the purchaser of its patented machines for conversion, unjust enrichment, and patent infringement. Defendant counters with a motion for dismissal and for summary judgment. For the reasons that follow, defendant's motion is granted in part and denied in part.

### FACTUAL BACKGROUND

Plaintiff Melea Limited (Melea) is the holder of several patents covering certain gas-assisted injection molding processes ("GAIN processes"), including U.S. patent No. 5,098,637 for a "Process For Injection Molding and Hollow Plastic Article Produced Thereby."

Plaintiff Plastic Molding Technologies does business as "GAIN Technologies," (PMT or GAIN) and has been appointed by Melea as its independent and non-exclusive representative for licensing Melea's patented technology and selling products which may be covered by such technology, such as gas-assisted injection molding equipment (GAIN equipment).

On or around December, 1995, Quality Models Limited ("Quality") purchased a GAIN unit from PMT ("1995 sale") but did not sign the Equipment Purchasing Agreement, which purportedly would have given Quality the rights to use any Melea patented processes.

On or around August, 1997, PMT entered into a Technical Representative Agreement ("the Agreement") with Richard Vandermuren ("Vandermuren") to promote the licensing of the GAIN Process, to market gas-assist injection molding equipment, and to provide technical services to existing and prospective licensees of the

GAIN Process. Pursuant to the Agreement, Vandermuren manufactured GAIN equipment. The Agreement required Vandermuren to ship all manufactured units back to PMT for a direct sale by PMT. The Agreement did not authorize Vandermuren to sell GAIN units or parts directly to any third party.

In 1998, Vandermuren manufactured and sold GAIN equipment directly to Quality ("Vandermuren sale"). Plaintiffs allege that at all times, Quality knew that Vandermuren did not have the authority to sell GAIN equipment directly, but nonetheless bought it from him.

## ANALYSIS

### Motion to Dismiss Standard

■ Fed.R.Civ.P. 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. I must construe the complaint in a light most favorable to the plaintiffs, accept all of the factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir.2000) (citations omitted).

### The Motion for Summary Judgment Standard

■ Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). I must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001).

### A. Conversion Claim

■ Defendant contends that plaintiffs' conversion claim is governed by Michigan's three year statute of limitations for "injuries to property." Mich.Comp.Laws. § 600.5805(9). Plaintiffs, on the other hand, argue that conversion claims are covered by Michigan's catch-all statute of limitations of six years because conversion is not an "injury to property." Mich. Comp.Laws. § 600.5813.

Under Michigan law, a general claim for conversion is not an "injury to property" and has a statute of limitations of six years. *See Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360 (1960) (conversion of automobile); *Davidson v. Bugbee*, 227 Mich.App. 264, 575 N.W.2d 574 (1997) (conversion of farm equipment); *Drapefair, Inc. v. Beitner*, 89 Mich.App. 531, 280 N.W.2d 585 (1979) (conversion of worker's compensation settlement proceeds); *Miller v. Green*, 37 Mich.App. 132, 194 N.W.2d 491 (1971) (conversion of farm animals); *Chrysler Corp. v. Bunnell Chrysler Dodge, Inc.*, 620 F.Supp. 1265, 1266–1267 (E.D.Mich.1985) (conversion of automobiles). However, an established exception to this general rule applies to conversion claims arising in the context of the Uniform Commercial Code (UCC), those claims being subject to the three-year statute of limitations for injury to property. *See, e.g., Continental Casualty Co. v. Huron Valley Nat'l Bank*, 85 Mich.App. 319, 271 N.W.2d 218 (1978); *Brennan v. Edward D Jones & Co.*, 245 Mich.App. 156, 626 N.W.2d 917 (2001).

Plaintiffs' conversion claim does not rely on the UCC conversion provisions, thus, the three-year statute of limitations does not apply.

■ The next question is when the claim accrued. Conversion is defined as "any distinct act of dominion wrongfully exerted over another's personal property,

and occurs at the point that such wrongful dominion is asserted." *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360 (1960). Under Michigan law, unless otherwise stated, a claim accrues unless otherwise provided by statute "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich.Comp.Laws Ann. § 600.5827. Thus, the time of accrual for the six-year statute of limitations begins when the conversion occurs, not when the original owner discovers the alleged conversion.

In this case, plaintiffs' conversion claim for the 1995 sale is time-barred. That claim accrued in 1995 when the sale was completed and the alleged wrongful dominion was exerted. On the other hand, the claim for the Vandermuren sale is not time-barred. The Vandermuren sale was completed in 1998 and falls within the six-year statute of limitations.

### B. Unjust Enrichment Claim

■ Defendant argues that under Michigan law, the statute of limitations for a claim of injury to property is three years when the duty is imposed by law. *Huhtala v. Travelers Insurance Co.*, 401 Mich. 118, 257 N.W.2d 640 (1977). *See also Hanson v. American Motors Corporation*, 83 Mich.App. 553, 558, 269 N.W.2d 222 (1978) ("the three year statute of limitations is applicable in all cases where the claim is for damages for injury to person or property except where that injury results from the breach of a specific contractual provision."). Thus, it contends, since the claim of unjust enrichment implies a contract as a matter of law, the three-year statute of limitations applies. *Martin v. East Lansing School District*, 193 Mich. App. 166, 177, 483 N.W.2d 656 (1992) ("the law implies a contract to prevent unjust enrichment, which occurs when one party receives a benefit from another the retention of which would be inequitable.").

Defendant is mistaken. While the duty imposed on an unjust enrichment claim is indeed a legal duty, plaintiffs' unjust enrichment claim does not present an "injury to property." The heart of plaintiffs' complaint is that defendant wrongfully converted plaintiffs' property in whole. *See Hart v. Detroit*, 416 Mich. 488, 331 N.W.2d 438 (1982) (holding that an inverse condemnation claim was subject to the six-year statute of limitations because a conversion claim is not an "injury to property" claim). Thus, the six-year statute of limitations applies in this case.

Like the conversion claim, the alleged unjust enrichment would have occurred at the time defendant allegedly converted plaintiffs' property. The wrong accrued in 1995 for the 1995 sale and in 1998 for the Vandermuren sale. The unjust enrichment claim for the 1995 sale is time-barred whereas the Vandermuren sale is not.

### C. Patent Infringement Claim

Defendant presents two arguments on summary judgment against the patent infringement claim. First, it contends that it received an implied license by purchasing the machine from plaintiffs. Second, defendant presents an estoppel defense based on representations made by plaintiffs and its sales representatives.

■ First, defendant argues that it obtained an implied license from the sale of the machine, citing *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) ("It is fundamental that [the] sale of a patented article by the patentee or under his authority carries with it 'an implied license to use.'"). Plaintiffs, on the other hand, contend that since the machine also has non-infringing uses, there is no implied license. *See Met–Coil Systems Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684 (Fed.Cir.1986) (holding

that a patentee grants an implied license to a purchaser when (1) the patentee sells an article that has no non-infringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred). As evidence, plaintiffs submit the declaration of Michael Ladney, who declares that the machine sold to Quality also has non-infringing uses. *See* Declaration of Michael Ladney, Plaintiff's Response Brief. Therefore, a genuine issue of material fact is in dispute.

■ Secondly, defendant asserts an estoppel defense. Defendant submits a news release reporting that beginning on April 1, 1995, "processor customers of Gain Technologies, Inc. no longer will have to buy separate licenses to use the company's gas-assisted molding technology.... customers automatically will be authorized to use all proprietary processes once they purchase equipment." Defendant's Motion for Summary Judgment. In its reply brief, defendant also presents the affidavit of Steven Van Hoeck, Sales Director for PMT in December, 1995, who represented PMT in the 1995 sale. In his affidavit, Van Hoeck declares that "[i]n April, 1995, before Quality Models purchased the unit, GAIN changed its practice and customers were automatically authorized to use all of GAIN's proprietary processes once they purchased equipment. Such grant was automatic and did not require a written license agreement."

Plaintiffs counter that Van Hoeck's December 4, 1995 letter contradicts Van Hoeck's affidavit. In the December 4,1995 letter to Quality, Van Hoeck wrote "[a]dditional terms are itemized in the Equipment Purchase Agreements left with you during our meeting." Plaintiffs' Ex. B(1). Viewing this evidence in a light most favorable to the plaintiffs, a genuine issue of material fact exists as to whether an oral license was given to defendant during the 1995 sale and whether defendant has a valid estoppel defense. Moreover, since Van Hoeck's affidavit was presented in defendant's reply brief, plaintiffs should, at the very least, be afforded an opportunity to depose Van Hoeck or to gather impeachment evidence through discovery. Thus, defendant's motion for summary judgment as to the patent infringement claim is denied.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss and for summary judgement against plaintiffs' conversion claim is GRANTED as to the 1995 sale, but DENIED as to the Vandermuren sale. Similarly, defendant's motion to dismiss and for summary judgment against plaintiffs' unjust enrichment claim is GRANTED as to the 1995 sale, but DENIED as to the Vandermuren sale. Finally, defendant's motion to dismiss and for summary judgment against plaintiffs' patent infringement claim is DENIED.

**IT IS SO ORDERED.**