**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED MARCH 10, 2010

DEPARTMENT OF AGRICULTURE and
MICHIGAN APPLE COMMITTEE,

       Plaintiffs-Appellants,

v

No. 137552

APPLETREE MARKETING, L.L.C., and
STEVEN KROPF,

       Defendants-Appellees.

BEFORE THE ENTIRE BENCH

YOUNG, J.

This case requires this Court to determine whether the remedies provided for a breach of the Agricultural Commodities Marketing Act (ACMA) supersede remedies provided by statute under the Revised Judicature Act (RJA) or abrogate those traditionally available at common law. We must further decide whether the member-manager of a limited liability company who causes his business to breach common law and statutory duties may be held independently liable for his personal torts.

We conclude that the ACMA does not provide the exclusive remedy for its violation and thus does not supersede preexisting statutory remedies or abrogate

common law remedies. Therefore, plaintiffs may pursue cumulative remedies provided by the ACMA as well as common law and statutory conversion. Furthermore, Michigan law is well settled that a plaintiff may pursue an action against a corporate official in his personal capacity when the plaintiff alleges that the official's own tortious conduct harmed the plaintiff. We hold that the trial court erred by dismissing plaintiffs' actions for conversion against defendant Steven Kropf. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Kent Circuit Court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The facts of the instant case are not disputed by any party. The Michigan Legislature enacted the ACMA[1] to provide "a procedure whereby marketing programs could be established for a wide variety of Michigan's agricultural products."[2] In this case, the agricultural product is apples. Pursuant to the ACMA, Michigan apple producers created plaintiff Michigan Apple Committee (the Committee), an agency within plaintiff Michigan Department of Agriculture (the Department). The Committee is funded through assessments placed on the purchase price charged to apple distributors. Under the ACMA, apple distributors

---

[1] MCL 290.651 *et seq*.

[2] *Dukesherer Farms, Inc v Dep't of Agriculture Director (After Remand)*, 405 Mich 1, 9; 273 NW2d 877 (1979).

2

deduct the assessments from payments sent to producers, hold the funds in trust, and remit the funds to the Committee on a periodic basis.[3]

Defendant Appletree Marketing, L.L.C. (Appletree), was an apple distributor managed by defendant Steven Kropf, Appletree's sole member. Although Appletree collected assessments for 2004 and 2005, it failed to remit any funds to the Committee. Instead, Appletree used the money to pay the company's other debts.

When a distributor fails to remit assessed funds, the ACMA allows the Committee to file a written complaint with the director of the Department. The director investigates and requests remittance; after 30 days, the director may file a complaint in court.[4] The Department and director each followed these procedures in the instant case. When Appletree—by this time a bankrupt and defunct corporation—failed to pay upon demand, plaintiffs filed a complaint against Appletree and Kropf to recover the 2004 assessments ($26,305.98) and subsequently amended the complaint to include the 2005 assessments

---

[3] MCL 290.655(e) ("All assessments collected or deducted shall be considered trust funds and be remitted quarterly or more frequently if required by the marketing program to the appropriate committee.").

[4] MCL 290.655(f).

3

($28,878.66). Plaintiffs alleged that Appletree violated the ACMA,[5] and that both Appletree and Kropf committed common law and statutory conversion.[6]

Defendants consented to a judgment of $55,184.64 against Appletree to settle plaintiffs' ACMA claim. However, defendants sought summary disposition on plaintiffs' conversion claims, arguing that the ACMA provided the exclusive remedies for the failure to remit the assessment funds because the act created new rights and prescribed particular remedies. The trial court agreed and dismissed with prejudice plaintiffs' conversion claims against both Appletree and Kropf, entering a final judgment against Appletree based on liability under the ACMA in the amount of $77,051.23.[7]

The Court of Appeals affirmed the trial court's judgment, holding that any claim that Appletree wrongfully spent the money held in trust was based entirely on the duty imposed on Appletree by the ACMA. Because "plaintiffs' common-law and statutory conversion claims do not exist without the ACMA," the ACMA provided the exclusive remedies.[8] Similarly, the Court reasoned that because Kropf could not be liable under the ACMA, he could not be personally liable in

[5] MCL 290.655.

[6] MCL 600.2919a (statutory conversion).

[7] This amount included the unpaid assessments, statutory interest pursuant to MCL 290.672 (1 percent a month), attorney fees, audit expenses, and other costs. See MCL 290.655(f).

[8] *Dep't of Agriculture v Appletree Marketing, LLC*, 280 Mich App 635, 645; 761 NW2d 277 (2008).

4

any regard; thus, the trial court did not err by dismissing the claims of conversion against him.

We granted plaintiffs' application for leave to appeal, directing the parties to address the following issues:

> (1) whether the plaintiffs may simultaneously pursue claims against Appletree Marketing, LLC for alleged violations of the Agricultural Commodities Marketing Act, MCL 290.651 *et seq.*, and for common-law and statutory conversion under MCL 600.2919a; and (2) whether, under the circumstances of this case, the plaintiffs may pursue claims for common-law and statutory conversion against Appletree's principal, Steven Kropf.[9]

## II. STANDARD OF REVIEW

Whether the ACMA provides plaintiffs' exclusive statutory remedy is a matter of statutory interpretation. Accordingly, our review is de novo.[10] Whether the ACMA abrogates claims for common law conversion is also a question of law, which we likewise review de novo.[11]

## III. ANALYSIS

### A. THE ACMA DOES NOT ABROGATE CONVERSION CLAIMS

We must first determine whether the ACMA displaces other statutory and common law causes of action. Plaintiffs urge this Court to recognize that the

---

[9] *Dep't of Agriculture v Appletree Marketing, LLC*, 483 Mich 1000, 1000-1001 (2009).

[10] See *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

[11] See *Kaiser v Allen*, 480 Mich 31, 35; 746 NW2d 92 (2008).

Legislature explicitly, and in unequivocal language, intended that any avenues for relief that the ACMA provides are cumulative to traditional common law or statutory remedies. Defendants and the courts below relied almost exclusively on the proposition that "[i]f 'a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only.'"[12] Defendants argue, and the courts below agreed, that this rule of statutory construction displaces the plain reading advanced by plaintiffs. While the proposition is generally a correct statement of law for construing statutes that create new causes of action, it cannot be applied in a manner that conflicts with the plain language prescribed by the Legislature.

### 1. STATUTORY CONVERSION

In interpreting statutory language, this Court's primary goal is to give effect to the Legislature's intent. If the Legislature has clearly expressed its intent in the language of a statute, that statute must be enforced as written, free of any "contrary judicial gloss."[13]

---

[12] *Dep't of Agriculture*, 280 Mich App at 642, quoting *Monroe Beverage Co, Inc v Stroh Brewery Co*, 454 Mich 41, 45; 559 NW2d 297 (1997).

[13] *Morales v Auto-Owners Ins Co (After Remand)*, 469 Mich 487, 490; 672 NW2d 849 (2003) (quotation marks and citation omitted).

In analyzing the relevant statutes, we turn first to the specific statutory language of the ACMA. The ACMA's enforcement provision provides, in relevant part:

> The director may institute an action necessary to enforce compliance with this act, a rule promulgated under this act, or a marketing agreement or program adopted under this act and committed to his or her administration. *In addition to any other remedy provided by law*, the director may apply for relief by injunction to protect the public interest without being compelled to allege or prove that an adequate remedy at law does not exist.[14]

The plain language of the statute does not limit the remedies the director may pursue. Contrary to defendants' argument that the ACMA provides the exclusive remedies, the language provides that "*any* other remed[ies]" may be pursued "[i]n *addition*" to those explicitly described. "Any" is defined as "every; all."[15] Clearly, this language is not exclusive of other remedies outside the ACMA.

While the emphasized text is an introductory clause to the statutory authorization permitting the director to obtain an injunction, it is not solely a limitation on the injunctive remedy. This statutory language contemplates *both* an action necessary to enforce the ACMA *and* an injunction *in addition to any other remedy provided by law*. Defendants read the ACMA as though the phrase "[i]n addition to any other remedy provided by law" actually says "in addition to any other remedy *provided by the ACMA*." It clearly does not. Thus, to give meaning

---

[14] MCL 290.669 (emphasis added).

[15] *Random House Webster's College Dictionary* (1997).

to the phrase "any other remedy *provided by law*" we must conclude that it means remedies *in addition* to those in the ACMA, such as those for conversion.

We next turn to the specific language used in the statutory conversion provision. MCL 600.2919a(2) provides that relief for a claim of statutory conversion "is in addition to any other right or remedy the person may have at law or otherwise."[16] This clear, unambiguous language explicitly indicates the cumulative nature of statutory conversion claims. Furthermore, as noted, the

---

[16] In full, MCL 600.2919a provides:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

MCL 600.2919a became effective in its present form on June 16, 2005, after amendment by 2005 PA 44. Before its amendment, MCL 600.2919a applied only to third parties who aided another's act of conversion or embezzlement, and did not apply to the person who directly converted or embezzled, as it does now. While the parties dispute which version of the RJA applies, for present purposes, the current version is substantially similar to the former version given that, in both, the statutory remedy provided is "in addition to" other remedies at law.

8

ACMA does not contain an exclusive remedy provision that would explicitly prevent such cumulative claims.[17] The Legislature has used expansive language indicating an intent to provide the broadest possible application, and thus allow cumulative remedies.

Thus, we conclude from a plain reading of both statutes that the cumulative nature of the remedies each permits is undeniable. Both the ACMA and MCL 600.2919a provide remedies that are *in addition to* other remedies at law and thus do not conflict. Therefore, the statutes should be applied as written, and the remedy in MCL 600.2919a must be allowed in addition to the remedy provided in the ACMA.

On examination, these statutory provisions appear relatively straightforward: they allow cumulative remedies. However, because the lower courts relied so heavily on the cases applying an interpretative proposition stated in *Monroe Beverage Co, Inc v Stroh Brewery Co*[18] to contradict the actual language of the statutes, it behooves us to examine this proposition to illustrate why it was misapplied.

---

[17] For example, the Legislature explicitly created this type of provision in the dramshop act, MCL 436.1801(10): "This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor."

[18] 454 Mich 41; 559 NW2d 297 (1997).

9

In *Monroe Beverage*, the plaintiff alleged that the defendant violated the former Liquor Control Act (LCA)[19] when it failed to consider transferring distribution rights to the plaintiff. The defendant had no such obligation at common law, and the LCA limited enforcement to "'a wholesaler with which the supplier has an agreement.'"[20] Because the plaintiff conceded that it did not have an agreement with the defendant, the Court held that the plaintiff could not recover under the LCA.[21] On these facts, this Court concluded that "[i]t is well established that '[w]here a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only.'"[22]

Most significant for the purposes of this case, this Court remanded to the Court of Appeals to consider whether the plaintiff could pursue its common law negligence claim against the defendant. The Court of Appeals held that the plaintiff's negligence claim failed because the defendant did not owe the plaintiff a duty to review its transfer request independent of the LCA.[23] Thus, the LCA

---

[19] MCL 436.1 *et seq.*, repealed by 1998 PA 58; see MCL 436.2301(a).

[20] *Monroe Beverage*, 454 Mich at 44, quoting MCL 436.30b(28).

[21] *Id.* at 44.

[22] *Id.* at 45, quoting *Lafayette Transfer & Storage Co v Michigan Pub Utilities Comm*, 287 Mich 488, 491; 283 NW 659 (1939).

[23] *Monroe Beverage Co, Inc v Stroh Brewery Co (On Remand)*, 224 Mich App 366, 369; 568 NW2d 687 (1997).

provided the exclusive remedy for such a failure, but excluded the plaintiff from its protections.

Later, in *South Haven v Van Buren Co Bd of Comm'rs*,[24] the plaintiff city sought restitution after the defendant presented a road millage proposal in violation of a statute requiring such proposals to provide for the distribution of the tax levies to the city. This Court concluded that the defendant had violated the statute. However, after quoting *Monroe Beverage*, the Court held that "[b]ecause nothing in the statute indicates any legislative intent to allow plaintiff to pursue a claim for restitution of misallocated funds, and the Legislature explicitly granted such authority to the Attorney General alone, plaintiff cannot seek restitution of the misallocated funds in this case."[25] This Court added, however, that the plaintiff could have obtained injunctive relief enjoining the collection of the millage or refunding collected taxes to taxpayers because "this Court has permitted [such relief] when a government official does not conform to his or her statutory duty to distribute funds in a specified manner."[26] Thus, the plaintiff was limited by the remedy provided in the statute, but could have obtained an equitable

---

[24] 478 Mich 518; 734 NW2d 533 (2007).

[25] *Id.* at 530-531.

[26] *Id.* at 531, citing *Thomson v City of Dearborn*, 347 Mich 365; 79 NW2d 841 (1956) (injunctive relief against misappropriation of funds), and *City of Jackson v Revenue Comm'r*, 316 Mich 694, 719; 26 NW2d 569 (1947) (constitutional amendment was "self-executing" and could be enforced by mandamus to compel the distribution of levied funds).

injunctive remedy that preexisted and was independent of the statutory remedy. It was critical to the Court's analysis that the Legislature granted the Attorney General the exclusive right to vindicate the violation at issue there. This Court held that the previously permitted injunctive relief remained available, and thus the proposition stated in *Monroe Beverage* was not applied to abrogate preexisting claims.

A review of these cases makes clear that neither is controlling under the facts presented here. In *Monroe Beverage*, there was no preexisting civil action for the claimed wrongful conduct; rather, the relevant statutory provisions provided the sole legal obligation and thus remedy. Here, in contrast, converting another's property was actionable by statute prior to the ACMA's enactment. Once defendants' original duty to hold plaintiffs' funds in trust arose, defendants had an *independent* fiduciary duty not to convert the trust funds they held. The proposition articulated in *Monroe Beverage* does not serve to eliminate *preexisting* duties, rights, and remedies. In this case, independent of the ACMA, defendants owed plaintiffs a duty not to convert their property. Accordingly, plaintiffs' conversion claim did not arise "under the act" and *Monroe Beverage* is not dispositive. More important, the ACMA explicitly states that its remedies are not exclusive.

Ultimately, the proposition articulated in *Monroe Beverage* should not be applied as a general statement concerning statutes that provide new rights and remedies irrespective of the specific language of such statutes. It should not, in

12

other words, be applied outside the facts that give rise to its application or in a manner that is contrary to the plain meaning of statutory language. This is because the Legislature is capable of permitting cumulative remedies, as is the case with the statutory language present here. We therefore hold that the ACMA and MCL 600.2919a clearly permit cumulative remedies.

## 2. COMMON LAW CONVERSION

These same principles—particularly our conclusions regarding the language of the enforcement provision of the ACMA—are equally applicable when determining whether the common law conversion claim was abrogated. We note that under our constitution, "[t]he common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."[27]

Common law conversion existed before the ACMA and consists of any "distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."[28] Conversion may occur when a

---

[27] Const 1963, art 3, § 7.

[28] *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992); see also *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960); *Nelson & Witt v Texas Co*, 256 Mich 65, 70; 239 NW 289 (1931).

13

party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party.[29]

This Court's recent ruling in *Cooper v Auto Club Ins Ass'n*[30] provides additional guidance. In *Cooper*, the plaintiffs asserted a common law fraud claim against their no-fault insurer, alleging that the defendant fraudulently induced them to accept unreasonably low compensation for attendant-care services provided by their mother. The Court held that "the no-fault act, which provides the remedy for injuries arising out of 'the ownership, maintenance, or use of a motor vehicle,' MCL 500.3105(1), does not abrogate actions arising out of the breach of other common-law duties."[31] This Court held that the plaintiffs' fraud action was distinct from an action claiming that an insurer refused to pay no-fault benefits to its insured because:

> (1) a fraud action requires an insured to prove several elements that are different from those required in a no-fault action; (2) a fraud action accrues at a different time than a no-fault action; and (3) a fraud action permits an insured to recover a wide range of damages that are not available in a no-fault action.[32]

---

[29] *Foremost*, 439 Mich at 391; *Thoma*, 360 Mich at 438; *Johnston v Whittemore*, 27 Mich 463, 468-469 (1873).

[30] 481 Mich 399; 751 NW2d 443 (2008).

[31] *Id.* at 411.

[32] *Id.* at 407.

14

Comparing the two claims, this Court stated that

> [u]nlike a no-fault claim, a fraud claim does not arise from an insurer's mere omission to perform a contractual or statutory obligation, such as its failure to pay all the [personal protection insurance] benefits to which its insureds are entitled. Rather, it arises from the insurer's breach of its separate and independent duty not to deceive the insureds, which duty is imposed by law as a function of the relationship of the parties.[33]

Furthermore, the Court observed that a first-party no-fault claim arises when the insurer fails to pay, but a fraud claim arises when the fraud is perpetrated.[34] Finally, in a first-party no-fault action, the insured may only recover no-fault benefits, but in a fraud action the insured may recover attorney fees, emotional-distress damages, and exemplary damages.[35]

Similarly, a conversion claim can be distinct from an ACMA claim. First, unlike an ACMA claim, a conversion claim does not arise from a distributor's mere "fail[ure] to deduct or remit any assessment due to the committee . . . ."[36] Indeed, "'refusal to deliver possession pursuant to a lawful demand is not conversion but only evidence of a conversion.'"[37] A conversion claim arises from

---

[33] *Id.* at 409.

[34] *Id.*

[35] *Id.*

[36] MCL 290.655(f).

[37] *Bush v Hayes*, 286 Mich 546, 551; 282 NW 239 (1938), quoting *Guarantee Bond & Mortgage Co v Hilding*, 246 Mich 334, 344; 224 NW 643 (1929); see also 2 Cooley, Torts (4th ed), § 335, p 519 ("The refusal to surrender

15

the distributor's breach of its separate and independent duty not to exert wrongful dominion over the Committee's personal property. Second, an ACMA claim arises when the distributor fails to collect or remit assessments when they are due, but a conversion claim arises whenever the distributor wrongfully exerts dominion over the Committee's property; this can occur at any time, before or after the remittance is due. Third, in an ACMA action, the Committee can recover the assessments plus costs and expenses, but in a conversion action the Committee can recover exemplary damages.

Although the ACMA collection scheme is new, the obligation to maintain another's property held in trust is not.[38] While it is true that plaintiffs' ownership of the assessments arises under the ACMA—and thus the *property right* that plaintiffs seek to enforce exists only due to the ACMA—the alleged wrongful *conduct* was actionable at common law and is distinct from the wrongful conduct addressed in the ACMA. Moreover, because an action for conversion existed at common law, this case is significantly distinct from *Monroe Beverage*, in which there was no prior existing common law action.

We cannot conclude, as defendants urge, that the ACMA remedies must be exclusive because defendants would not have had any duty to remit the funds

_____

possession in response to a demand is not of itself a conversion; it is only evidence of a conversion, and like other inconclusive acts is open to explanation.").

[38] See, e.g., *Bd of Fire & Water Comm'rs of Marquette v Wilkinson*, 119 Mich 655; 78 NW 893 (1899).

absent the ACMA. As plaintiffs note, one's duty as a trustee must arise from agreement or, as here, by law. The common law then delineates that duty and provides remedies to the rightful possessor in the event of misuse of the property. The lower courts erred by focusing on how defendants came into possession of the property rather than on defendants' actions after possession of the property was lawfully gained. The ACMA assigns distributors the role of statutory trustees of the assessments due to the Committee. The Legislature included no language suggesting that it intended to avoid the imposition of common law liability for conversion in violation of the fiduciary duties created by the ACMA. Therefore, just as for claims of statutory conversion, we hold that the ACMA did not abrogate common law claims for conversion.

## B. PERSONAL LIABILITY OF KROPF

The final issue before this Court is whether plaintiffs may pursue claims for common law and statutory conversion against Appletree's principal, Steven Kropf. Plaintiffs allege that Kropf, as the sole member and manager of Appletree, converted the unremitted funds for a use other than the one for which they were held in trust.

Michigan law has long provided that corporate officials may be held personally liable for their individual tortious acts done in the course of business, regardless of whether they were acting for their personal benefit or the

17

corporation's benefit.[39]  Moreover, as Michigan courts have recognized, "[o]fficers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully."[40]  Indeed, this Court held a corporate official individually liable for a conversion claim in *Bush v Hayes*.[41]  There, a supervisor was held liable for conversion for his personal tortious misconduct when the plaintiff's products (beans) over which the supervisor had control were moved and never returned.  On appeal of a directed verdict in favor of the defendants, the Court explained:

> The trial judge erred in instructing the jury that to hold the defendants liable there must be evidence showing that they converted the beans to their own use.  If there has been a conversion in which they participated they are liable.  It is of no consequence whether they acted for the corporation or acted for themselves if they were active participants in converting beans which belonged to

---

[39] See, e.g., *Allen v Morris Bldg Co*, 360 Mich 214, 218; 103 NW2d 491 (1960) ("The proofs show that [defendant] was the majority stockholder, president, and in control of defendant corporation's activities, and that he personally supervised the operations of which complaint is made herein.  He participated in the tort and is liable with the corporate defendant."), citing *Wines v Crosby & Co*, 169 Mich 210; 135 NW 96 (1912); *Moore v Andrews*, 203 Mich 219, 232-233; 168 NW 1037 (1918) (holding that an action for conversion may lie against directors, officers, or agents of a corporation to a person injured by their torts); see also 2 Restatement Agency, 3d, § 7.01, p 115 ("An agent is subject to liability to a third party harmed by the agent's tortious conduct.  Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.").

[40] *Livonia Bldg Materials Co v Harrison Constr Co*, 276 Mich App 514, 519; 742 NW2d 140 (2007).

[41] *Bush*, 286 Mich at 548-549.

plaintiff.  They are liable for the torts which they commit, be it for themselves or for another.[42]

Defendants further argue that plaintiffs must "pierce the corporate veil" in order to hold Kropf personally liable.  However, we have never required that a plaintiff pierce the corporate veil in order to hold corporate officials liable for *their own* tortious misconduct, and thus it is unnecessary to pierce the corporate veil in this case.  Conversion is an intentional tort,[43] and piercing the corporate veil is not necessary to a determination of personal liability for intentional torts: regardless of the corporate form, officers remain personally liable for their intentional and criminal conduct.

There is no question that, if the facts prove either common law or statutory conversion, Kropf can be held personally liable and may not hide behind the corporate form in order to prevent liability for his active participation in the tort.[44] Moreover, plaintiffs need not allege a violation of the ACMA in relation to Kropf in order to hold him personally liable for the separate personal tort of conversion.

## IV.  CONCLUSION

We hold that the ACMA does not supersede claims of statutory conversion or abrogate claims of common law conversion, and thus plaintiffs may pursue

---

[42] *Id.* at 549-550.

[43] *Foremost*, 439 Mich at 391.

[44] We note that any conversion claims against defendants are not currently before this Court, and thus we refrain from any comment or judgment on their merits.

19

remedies under the ACMA cumulative to remedies for conversion. We further hold that Steven Kropf may be held personally liable for any intentional torts he is proved to have committed in the course of operating his business. Accordingly, the judgment of the Court of Appeals is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

Robert P. Young, Jr.
Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Stephen P. Markman
Diane M. Hathaway