# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOLAN JACKSON, beneficiary of EQUITY
TRUST COMPANY FBO JOLAN JACKSON
IRA NO 118410,

        Plaintiff-Appellee,

v

JAY SPENCER,

        Defendant-Appellant,

and

MACKINAC REALTY GROUP, LLC, TATE
JESKY, and MACKINAC ADVISORY
SERVICES, LLC,

        Defendants.

UNPUBLISHED
December 27, 2016

No. 329233
Kent Circuit Court
LC No. 13-004271-NZ

---

Before: BORRELLO, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Jay Spencer, appeals by right the trial court's grant of summary disposition under MCR 2.116(C)(10) to plaintiff, and the trial court's August 24, 2015 judgment. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from a series of financial transactions which took place in 2011 between plaintiff and the defendants. In July 2008, David Scholl, a "financial advisor" and friend of plaintiff, counseled plaintiff to convert the roughly $480,000 plaintiff had in his 401(k) into an IRA to be managed by Scholl. Plaintiff initially invested $200,000 of this IRA into annuities, and then he waited for the market to improve before deciding how to invest the remaining $280,000. In April 2011, Scholl told plaintiff that he had two friends, defendants Jay Spencer and Tate Jesky, who allegedly worked together purchasing foreclosed properties, rehabilitating them, and selling them for a profit. Scholl told plaintiff that Spencer and Jesky proposed a deal whereby plaintiff would provide them with money to purchase and rehabilitate houses, after which they would sell the houses and return plaintiff his money with interest within

-1-

four months of his initial investment. Plaintiff agreed to the deal by executing a direction of investment providing instructions as to how the money would be invested. The document stated that $241,000 of plaintiff's money would be transferred to defendant Mackinac Advisory Services, LLC (MAS), which was Jesky's company. The document instructed that specific portions of this fund were to be used to purchase and rehabilitate six specific properties in Grand Rapids and Kalamazoo, Michigan. In exchange for the loan, plaintiff agreed to receive a note and mortgage. A note dated June 21, 2011, states that MAS promised to pay plaintiff $257,870 120 days after disbursement of the $241,000. A mortgage dated June 21, 2011, states that MAS mortgaged the six properties to plaintiff. Spencer signed the note and mortgage on behalf of MAS. However, there is no dispute that the originals of both documents are lost and that neither was recorded. On June 13, 2011, the $241,000 was deposited into a self-directed IRA, i.e., the Equity Trust Company FBO Jolan Jackson IRA No. 118410.

On June 21, 2011, the money was transferred to America's One Title Company. In an email dated June 16, 2011, from Spencer to the president of America's One, Spencer stated that the $241,000 was to be disbursed to MAS in accord with plaintiff's direction of investment. However, on June 21 and 28, 2011, $180,000 of plaintiff's money was transferred from America's One into a bank account in the name of defendant Mackinac Realty Group, LLC (MRG). Spencer testified that he was the sole member of MRG and that he had control over MRG's bank accounts. Spencer testified that the MRG account into which the $180,000 was initially transferred was called the "construction" account. In late June 2011, approximately $20,000 of the $180,000 was transferred from the construction account into another MRG account, which Spencer called the "operations" account. Evidence shows that Spencer used the money transferred into the operations account on personal expenses, such as dining out and mortgage payments. The record is not clear on what exactly became of most of the $180,000; however, the record reveals that the money was entirely dissipated, and it was not spent on rehabilitating the properties at issue. Also, none of the $180,000 was returned to plaintiff.

When plaintiff failed to receive a feasible explanation as to what had happened to the funds he invested with defendants, he commenced suit, eventually settling with everyone except for defendant Spencer. Record evidence reveals that plaintiff recovered approximately $15,000 from Jesky and $172,000 from Scholl.[1]

Following the taking of depositions both parties filed motions for summary disposition. The trial court granted plaintiff summary disposition against Spencer with regard to plaintiff's claims for common-law and statutory conversion. The trial court determined that plaintiff's actual damages amounted to $180,000, and entered a judgment against Spencer pursuant to MCL 600.2919a for $379.359.19. This appeal then ensued.

## II. ANALYSIS

---

[1] Plaintiff's recovery from Scholl occurred in a procedure pursuant to the rules of the Financial Industry Regulatory Authority (FINRA).

On appeal, defendant first argues that the trial court erred by engaging in fact finding in order to grant plaintiff summary disposition. Defendant cites to this Court instances during trial court proceedings where he alleges that the trial court either made factual findings or gleaned inappropriate findings from the facts presented. Additionally, defendant argues on appeal that he should have been granted summary disposition because there exists no genuine question of material fact that he is not liable to plaintiff for common-law or statutory conversion.

Summary disposition is proper under MCR 2.116(C)(10) where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). This Court reviews a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

"[T]he scope of a common-law conversion is now well-settled in Michigan law as 'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' " *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015), quoting *Nelson & Witt v Texas Co*, 256 Mich 65, 70; 239 NW 289 (1931) (citation and quotation marks omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 14; 779 NW2d 237 (2010). "Money is treated as personal property, and an action may lie in conversion of money provided that 'there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified.' " *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2013), quoting *Garras v Bekiares*, 315 Mich 141, 149; 23 NW2d 239 (1946). "To support an action for conversion of money, the defendant 'must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship,' and 'must have had an obligation to return the specific money entrusted to his care.' " *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004), quoting *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999) (citation and quotation marks omitted). This Court has held that "[a]lthough an action cannot be maintained for conversion of money unless there is an obligation on the part of the defendant to return the specific money entrusted to his care, it is not necessary that the money should be specifically earmarked for its return." *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 575; 444 NW2d 210 (1989).

As previously reported, the record reveals that plaintiff agreed to lend $241,000 to MAS for the purpose of purchasing and rehabilitating six specific parcels of real estate. The email from Spencer to America's One as well as plaintiff's direction of investment state that the money was to be used for that purpose. The June 21, 2011 note states that MAS was obligated to repay to plaintiff the loan with interest. Spencer argues that because plaintiff voluntarily entered into a debtor-creditor relationship with MAS, he cannot sustain a claim of conversion. But plaintiff's claim of conversion against MAS was dismissed and is not at issue. Rather, plaintiff's claim of

conversion at issue is against Spencer, and there is no indication in the record that plaintiff voluntarily entered into a debtor-creditor relationship with Spencer individually or with MRG. And evidence clearly shows that plaintiff made the loan under an agreement that the $241,000 would be returned to him with interest after 120 days. Spencer signed the note stating so, and accordingly, there is no factual dispute on that matter. *Curry*, 261 Mich App at 591.

Furthermore, the record reveals that the $180,000 of plaintiff's loan at issue in this case never went to MAS. Rather, the money was transferred from America's One into MRG's construction account on June 21 and 28, 2011. The record also reveals that Spencer was responsible for this transfer to MRG, as demonstrated by the June 16, 2011 email and Jesky's deposition testimony that Spencer was in control of the funds. Spencer testified that he opened the accounts on MRG's behalf and that he was the sole member of MRG. Again, from the record we cannot glean a question of fact relative to the issue of whether the missing funds were under Spencer's "dominion." *Aroma Wines & Equip*, 497 Mich at 351-352. There is also no question of fact that Spencer "wrongfully exerted" this dominion over this money "in denial of or inconsistent with his [i.e., plaintiff's] rights therein." *Id.* As discussed above, plaintiff loaned the money for the sole purpose of purchasing and rehabilitating six specific properties, and expected to be fully reimbursed with interest in 120 days. At the time the $180,000 was transferred to MRG's construction account, the balance of that account was $62. There is no indication that other funds besides the $180,000 were deposited into the account. In late June 2011, multiple withdrawals were made from the construction account. Spencer admitted in his deposition that he spent some of the money on personal expenses; however, he argues on appeal that these personal expenses were made from MRG's operating account rather than the construction account. But the bank records clearly show that the money in the operating account came almost exclusively from the construction account, and that the money in the construction account came almost exclusively from the June 2011 transfers of plaintiff's funds from America's One. We fail to understand how it would make any difference whether defendant took the money from the operating account rather than the construction account. Clearly, defendant did not spend the money for any purpose for which it was advanced, and he clearly converted the funds to his own personal use. Therefore, while this Court acknowledges the argument advanced by defendant, his argument as to which account he took the money is of no legal relevance to the issue of whether the trial court should have granted plaintiff summary disposition.

Furthermore, MRG had title to some of the six properties before plaintiff made the loan. Scholl testified that when he inspected the properties 120 days after the loan was made, he saw that no rehabilitation work had been done on them. There is no dispute that Spencer never repaid plaintiff any of the $180,000 that was transferred to MRG. Therefore, there is no question of fact that Spencer exercised dominion over plaintiff's money "in denial of or inconsistent with his [i.e., plaintiff's] rights therein." *Id.* The trial court properly granted summary disposition in plaintiff's favor with regard to plaintiff's claim of common-law conversion. *Id.*; *Latham*, 480 Mich at 111. Spencer argued that the trial court's decision regarding summary disposition was based on factual findings and was, therefore, in error. However, as discussed above, there was no question of fact that Spencer committed common-law conversion with regard to plaintiff's $180,000. Even if the trial court's decision was based on improper findings of fact, "this Court will affirm where the trial court came to the right result even if for the wrong reason." *Fisher v Blankenship*, 286 Mich App 54, 70; 777 NW2d 469 (2009).

With regard to statutory conversion, MCL 600.2919a states that "[a] person damaged as a result of . . . the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use." Our Supreme Court determined that the Legislature's inclusion of the phrase "to the other person's own use" indicated the intent to limit that provision "to a subset of common-law conversions in which the common-law conversion was to the other person's 'own use.' " *Aroma Wines & Equip, Inc*, 497 Mich at 355. The Court further concluded that "the only restriction to the application of MCL 600.2919a(1)(a) to a common-law conversion offense is that it must be used for a purpose personal to the converter." *Id.* at 358. In other words, "conversion 'to the other person's own use' requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.* at 358-359.

When moving for summary disposition under MCR 2.116(C)(10) on his claim of statutory conversion, plaintiff had "the initial burden of supporting [hi]s position" that there was no question of fact that Spencer converted the money for his own use, by producing "affidavits, depositions, admissions, or other documentary evidence." *Bronson Methodist Hosp v Auto-Owners Inc Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Then, it was Spencer's burden "to show by evidentiary materials that a genuine issue of disputed material fact exists." *Id.* at 440-441. Evidence shows that the $180,000 was transferred into MRG's construction account in June 2011. Spencer testified that he was the sole member of MRG, that he opened the Chase accounts on behalf of MRG, and that he was the only person with authority to write checks to those accounts. Jesky testified that Spencer was in control of the $180,000. Spencer never disputed in the trial court, and he does not dispute on appeal, that the $180,000 was under his control. Again, the record is clear that only Spencer had access to the money and only Spencer spent the money "for some purpose personal to [his] interests" and to "benefit [him]self[.]" *Aroma Wines & Equip, Inc*, 497 Mich at 358-360. After plaintiff presented his evidence, it was Spencer's burden "to show by evidentiary materials that a genuine issue of disputed material fact exist[ed]" with regard to whether he converted the money for his own use. *Bronson Methodist Hosp*, 295 Mich App at 440-441. Spencer presented no evidence to indicate that he did not convert the $180,000 for his own use. Therefore, the trial court properly granted plaintiff's motion for summary disposition with regard to statutory conversion and properly denied defendants motion for summary disposition. *Latham*, 480 Mich at 111.

Spencer also argues on appeal that the trial court erred in failing to reduce the amount of plaintiff's actual damages according to the amount that plaintiff recovered from Jesky and Scholl. We review this question of law de novo. *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 102; 767 NW2d 668 (2009). As discussed above, MCL 600.2919a(1) allows for an award of "3 times the amount of actual damages sustained . . . ." The trial court concluded that plaintiff's actual damages were $180,000, and it multiplied that amount by three in determining plaintiff's damages under MCL 600.2919a(1). Spencer argued that plaintiff's actual damages were zero because the $180,000 should have been reduced by plaintiff's recovery from Jesky and Scholl. However, this Court has held that "MCL 600.2919a is a punitive statute that provides for recovery of three times the amount embezzled. Punitive damages reflect a worthy public policy consideration of punishing dishonest defendants and setting an example for similar wrongdoers." *Hague*, 283 Mich App at 104. To that end, this Court has held that "actual damages" refers to "the actual loss a complainant suffered as a result of a defendant's criminal conduct[,]" and that

-5-

the amount of actual damages to be trebled under MCL 600.2919a should not be reduced by an amount the plaintiff recovered from parties other than the defendant. *Id.* at 103-104. Therefore, the trial court did not err in failing to reduce plaintiff's actual damages according to the amount that plaintiff recovered from Jesky and Scholl. *Id.*

Affirmed. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Jane E. Markey