MIRACLE BOOT PULLER COMPANY, LTD v PLASTRAY
CORPORATION

1. TRIAL—VERDICT—DIRECTED VERDICT—MOTIONS—EVIDENCE—SUFFI-
   CIENCY OF EVIDENCE.

   The question on a motion for a directed verdict is not one of the
   preponderance of the evidence introduced but whether the
   plaintiff has presented sufficient evidence to go to the jury on a
   material question of fact which, if determined in favor of the
   plaintiff, would entitle him to a judgment.

2. TRIAL—JURY—VERDICT—DIRECTED VERDICT.

   A trial judge must exercise extreme caution in removing an issue
   from the jury, and the right to have a jury pass on questions of
   fact must be protected even when only scant evidence is pre-
   sented.

3. APPEAL AND ERROR—VERDICT—DIRECTED VERDICT—EVIDENCE.

   In passing upon whether a motion for a directed verdict was
   properly granted, the Court of Appeals must view the evidence
   in the light most favorable to the non-movant.

4. JUDGMENT—SUMMARY JUDGMENT—EVIDENCE—QUESTION OF FACT.

   Summary dismissal of a case was improper where a review of the
   testimony shows that enough evidence was presented to raise
   questions of fact and reasonable inferences for the jury to
   consider.

5. FRAUDS, STATUTE OF—CONTRACTS—CONVERSION—EVIDENCE—SUFFI-
   CIENCY OF EVIDENCE—QUESTION OF FACT.

   A trial court erred in holding that a written contract signed by
   the plaintiff and a party other than the defendant was inadmis-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial §§ 482, 483.
[3] 4 Am Jur 2d, Appeal and Error § 110.
   5 Am Jur 2d, Appeal and Error § 886.
[4] 73 Am Jur 2d, Summary Judgment §§ 15, 16.
[5, 6] 18 Am Jur 2d, Conversion § 14.
   Nature of property or rights other than tangible chattels which
   may be subject of conversion. 44 ALR2d 927.

sible on the basis of the statute of frauds where the evidence presented revealed that the defendant had manufactured and sold a product on which the plaintiff held the patent rights, and was sufficient to show or raise an inference that consideration had passed to the defendant; such evidence was sufficient to warrant submission to the jury on the questions of whether there was a contract between the plaintiff and defendant and if so, whether there was a breach thereof, and whether there had been a conversion of the patent rights and of the mold from which the product was manufactured.

6. Conversion—Intangible Personal Property—Patent Rights.

The intangible right to benefit from a patent right can be the subject of conversion, because intangible personal property as well as specifiable, physical chattels can be converted.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 October 15, 1974, at Lansing. (Docket No. 18337.) Decided January 7, 1975.

Complaint by Miracle Boot Puller Company, Ltd. against Plastray Corporation for damages for breach of contract and conversion. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Shrauger, Shively & Dunn,* for plaintiff.

Before: D. E. Holbrook, P. J., and R. B. Burns and Bebeau,* JJ.

D. E. Holbrook, P. J. Plaintiff, a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal office in the City of Windsor, brought suit against defendant, a Michigan corporation with its principal office in Mt. Clemens, alleging (1) contract and breach; and, (2) conversion of patent rights and a mold. As plaintiff rested, counsel for defendant made the following motion:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"If your honor please, which ever the court desires to call it, I would move at this time to direct the court to direct the jury to return a verdict of no cause for action or in the alternative, under the provisions of GCR 1963, 117 to move for a summary judgment of no cause of action at the close then of the plaintiff's case * * * "

The court answered this motion, saying:

"I think while it is true that on motion for summary judgment the court must take the testimony produced by the plaintiff in the light most favorable to the plaintiff, *there is one other thing that we do have to consider here and that is the burden of proof on the plaintiff to prove his cause of action by a preponderance of the evidence,* and I feel that the plaintiff has failed in that respect and has not been able to sustain that burden, and it is the judgment of this court that the Motion for Summary Judgment should be granted." (Emphasis supplied.)

The order which was entered was a "Summary Judgment of Dismissal".

At the outset, we note that the proper motion was one for directed verdict. See GCR 1963, 515.1. In *Daniel v McNamara,* 10 Mich App 299, 304; 159 NW2d 339, 341 (1968), the Court said:

"On a motion for directed verdict, the question is not one of the preponderance of the evidence introduced by the plaintiff, but whether plaintiff has presented sufficient evidence to go to a jury on a material question of fact, which, if determined in plaintiff's favor, would entitle her to a judgment."

As a guideline for reviewing the taking of the case from the jury, we turn to the words of Michigan's eminent jurist, Justice COOLEY, who stated in the case of *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 117 (1868):

"In determining this question, we must look at the

case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the Court to compare and weigh the evidence."

This language has been quoted with approval in *Schedlbauer v Chris-Craft Corp,* 381 Mich 217, 229–230; 160 NW2d 889, 896 (1968), and *Losinski v Ford Motor Co,* 43 Mich App 114, 118; 204 NW2d 49, 52 (1972).

A trial judge must exercise extreme caution in removing an issue from the jury. *Patrick v Pulte-Strang, Inc,* 8 Mich App 487, 495; 154 NW2d 654, 658 (1967). "The right to have a jury pass on questions of fact must be protected even when only 'scant' evidence is presented." *Kujawski v Cohen,* 56 Mich App 533, 535; 224 NW2d 908, 910 (1974). In passing upon this claim, we are bound to view the evidence in the light most favorable to the nonmovant. *Id,* 535.

Thus, we make no findings of fact in the present case, but rather only reiterate the facts as presented in the light most favorable to the plaintiff to determine whether there was any evidence present allowing the case to be jury submissible. Viewed in this light, the testimony revealed the following: Plaintiff had invented a Boot Puller, which facilitates the removal of boots. This item was patented in the United States (No. 3526346) and in Canada. Plaintiff had made a mold to specifications to enable the production of the product by the pouring of plastic into the mold, allowing it to gel and solidify. For sometime these items

were manufactured in Canada. Then plaintiff began negotiations to lease patent rights on the mold, offering exclusive production and distribution rights for the United States.

It appears that the first negotiations took place in June of 1970. Participating were: Mr. Leonard Drouillard, secretary-treasurer of plaintiff and inventor of the Boot Puller; Mr. Zanette, an incorporator of the plaintiff; Mr. Erickson, actually president of the defendant, but claiming at that time to be president of Macomb Plastics and other firms; and Mr. Lucier, who Erickson claimed to be employed by him at Macomb Plastics. A written contract was entered into between plaintiff and Lucier in July of 1970. The signatures appearing on that contract are Zanette, Drouillard, Lucier and Dodick, attorney for the plaintiff at the time. The terms of the contract were that Lucier was to have exclusive use of the patent rights and mold and that plaintiff was to be paid fees and royalties. According to the agreement, Lucier was not to transfer possession of the mold without plaintiff's permission. Lucier took the mold from the plaintiff in Canada and transported it to the United States. Introduced at trial was a special customs invoice that stated that on July 27, 1970, one "USED 2 CAVITY MOLD WITH SINGLE CAVITY AND CORE ONLY" valued at $6400 in Canadian funds was being transported from the Miracle Boot Puller Company in Windsor, Ontario, to Plastray, Inc. Also introduced was a memorandum of insurance special floater policy. This policy gave coverage for "STEEL BOOT PULLER MOLD WHILE IN TRANSIT AND AT PLASTRAY CORPORATION, 35135 GROSBECK, [sic] MT. CLEMENS, MICHIGAN". The insured's name on that policy was defendant, Plastray Corporation. The policy states

that any loss is payable to the Miracle Boot Puller Company.

Drouillard testified that Lucier failed to make payments. As a consequence thereof, representatives of plaintiff went in search of the mold. By the insurance papers, they were led to defendant. Drouillard testified that there they met with Mr. Quello, general manager of defendant, who was authorized to enter into contracts on behalf of defendant. It was testified that at that meeting Quello told representatives of plaintiff that Lucier was no longer employed there but that Plastray would assume the contract and that the first installment would be sent within a few days. Drouillard further testified that Quello told the representatives that Plastray was producing the subject Boot Pullers and that they were selling and marketing them all over the country. He was said to have shown the representatives a sample that Plastray had made. No payment was forthcoming and plaintiff again made efforts to contact defendant. There was testimony that representatives of plaintiff again went to meet with Mr. Quello. Drouillard testified that the representatives were told to get out of Quello's office. Plaintiff was said to have made subsequent efforts to regain possession of the mold and had considerable difficulty in doing so. Quello said that he did not have the mold and did not know where it was. The mold was finally recovered in May of 1971 at defendant's place of business following an application for an order in the United States District Court for the Eastern District of Michigan.

A review of the foregoing shows that enough evidence was presented to raise questions of fact and reasonable inferences for the jury to consider. Thus, the summary dismissal of the present case

was improper. We deem it appropriate to pass upon other issues presented.

An issue of jurisprudential significance is presented by the assertion that the trial judge erred in holding inadmissible the written contract between the plaintiff and Lucier on the basis of the statute of frauds.

Plaintiff has presented three alternative theories of contract: (1) that the contract was entered into between plaintiff and defendant; (2) that there was a contract on the basis of undisclosed principal; and, (3) that the defendant assumed the contract.[1] Apparently, the trial court found of the three theories the one applicable was the last and that, as such, the contract was inadmissible. MCLA 566.132; MSA 26.922 provides, in pertinent part:

"In the following cases specified in this section, every agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized, that is to say: * * *

"2. Every special promise to answer for the debt, default or misdoings of another person;"

For further light on the subject we turn again to Justice COOLEY, who in *Calkins v Chandler,* 36 Mich 320, 324–325 (1877), wrote:

"In many cases the test whether a promise is or is not within the statute of frauds is to be found in the fact that the original debtor does or does not remain liable on his undertaking; if he is discharged by a new arrangement made on sufficient consideration, with a third party, this third party may be held on his promise

---

[1] We find it unnecessary to pass upon the propriety of any of these theories. It is for plaintiff to substantiate any one of these at trial with further facts. We note that we are loath to explain why Lucier and Erickson were not called to testify.

though not in writing; but if the original debtor remains liable and the promise of the third party is only collateral to his, it will in strictness be nothing more than a promise to answer for the other's debt. But where the third party is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or not."

See also *McLaughlin v Austin,* 104 Mich 489, 493; 62 NW 719 (1895); and, *Cokely v Kelly-Mitchell Construction Co,* 32 Mich App 689, 692; 189 NW2d 67, 68 (1971), where Judge R. B. BURNS quoted the foregoing language of Justice COOLEY and cited a series of cases following *Calkins.*

Evidence was produced at trial showing that Plastray had either manufactured or had had manufactured, and certainly sold, a number of the subject Boot Pullers. As plaintiff's Exhibit 7, defendant's answer to interrogatories in the United States District Court was introduced. Attached thereto is found an advertising flier from Plastray Corporation introducing "Boots Off" by Plastray. Further attached are invoices showing sales of a number of Boot Pullers. Without going unnecessarily farther, we find that evidence was presented to show or raise an inference that consideration had passed to defendant. We have determined that there was sufficient evidence to warrant submission to the jury on the contract count. Plaintiff also asserts that there was sufficient evidence to warrant submission to the jury the question of conversion of patent rights and the mold.[2] We agree.

The mold being a specifiable, physical chattel

---

[2] We note that the conversion issue was not argued to the court under the motion. The issue was raised by the pleadings and by the evidence, therefore we discuss it. *Cf. Adams v Evans,* 343 Mich 94; 72 NW2d 131 (1955).

can be the subject of conversion; likewise, intangible personal property can also be the subject of conversion. *Warren Tool Co v Stephenson,* 11 Mich App 274, 298; 161 NW2d 133, 147 (1968), and *Tuuk v Andersen,* 21 Mich App 1, 13; 175 NW2d 322, 328 (1969). As such, the intangible right to benefit from a patent right can be converted.

This case is reversed and remanded for determination by the jury based on contract and conversion.[3] Costs to plaintiff.

All concurred.

---

[3] Finally, we point out that we have not been assisted by the fact that the defendant failed to submit a brief on appeal.