SARVER v DETROIT EDISON COMPANY

Docket No. 181801. Submitted November 13, 1996, at Detroit. Decided October 3, 1997, at 9:05 A.M. Leave to appeal sought.

Elisabeth J. Sarver brought an action in the Wayne Circuit Court against The Detroit Edison Company, her former employer, seeking damages for conversion and breach of contract after the defendant allegedly appropriated her idea to streamline and computerize customer billings for disconnection and turn-on of service without rewarding her monetarily as outlined in the provisions of the employee manual concerning the employee suggestion plan under which she submitted, and the defendant rejected, her idea. The court, Marvin R. Stempien, J., entered judgment on a jury verdict and award of damages for the plaintiff on the claim of conversion and a verdict of no cause of action on the claim of breach of contract. The defendant appealed.

The Court of Appeals *held*:

1. The plaintiff's idea, as submitted pursuant to the employee suggestion plan, did not constitute a property interest that could be subject to conversion. An idea is not subject to conversion unless it is expressed in a legally protected manner as by patent, trademark, or copyright. In this case, the plaintiff's idea was not expressed in such a manner and was, in her own expert's opinion, neither novel nor unique.

2. To the extent that the plaintiff sought compensation for formulating, drafting, and submitted her idea pursuant to the defendant's employee suggestion plan, rather than for the idea itself, she stated a claim of breach of contract. If, following a new trial on the claim of breach of contract, the trier of fact determines that a breach of contract occurred, the trier of fact must decide whether the plaintiff should be compensated under the terms of the employee suggestion plan as it existed when the plaintiff first submitted her idea or under the terms that existed when the defendant rejected her idea after reevaluating it.

Reversed and remanded for a new trial on the claim of breach of contract only.

WHITE, J., concurring in part and dissenting in part, disagreed with the majority's determination that the plaintiff's idea was not a

property interest that could be subject to conversion, but agreed that a new trial is warranted because the jury's verdicts were inconsistent. The jury could not consistently find conversion without finding breach of contract under the language of the employee suggestion plan.

1. CONVERSION — IDEAS.
   An idea is not subject to conversion unless it is expressed in a legally protected manner as by patent, trademark, or copyright.

2. CONTRACTS — EMPLOYEE SUGGESTION PROGRAMS.
   A valid and enforceable contract is created between an employer and an employee where the employer implements an employee suggestion program offering to reward employees for suggestions and the employee submits a suggestion.

*Mark Granzotto* and *Joseph J. George*, for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the defendant.

Before: HOLBROOK, JR., P.J., and WHITE and A. T. DAVIS*, JJ.

HOLBROOK, JR., P.J. Defendant appeals as of right from a circuit court judgment entered on a jury verdict that found that defendant had wilfully converted plaintiff's idea that she had submitted under defendant's employee suggestion plan. The jury awarded plaintiff $3,384,427 in damages. We reverse and remand for a new trial.

Before retiring from The Detroit Edison Company in 1994, plaintiff worked as a processor in the customer accounting department. Plaintiff's official job title was "Secondary Account Analyst," and her duties included addressing customer complaints, solving problems with customer billing, and training other

---

* Circuit judge, sitting on the Court of Appeals by assignment.

employees in the company. While working at Edison, plaintiff developed skill in operating the company's computerized "Customer Information System" (CIS). However, plaintiff did not officially work as a computer programmer.

About 1976, when the company started placing turn-on/disconnect orders on the CIS, plaintiff began thinking about an idea to make the company's turn-on/disconnect process run more efficiently. Edison's traditional system for turn-on/disconnect orders worked as follows: When a dwelling was vacated, Edison would send a field service person to the unit. The field person would read the meter on the day the unit was vacated and bill the prior occupant. Subsequently, when a new occupant moved into that unit, another field representative went to the unit, read the meter, and billed the new occupant. Additionally, a scheduled monthly meter reader was sent to the premises as well. Over the years, plaintiff realized that three people were being sent to perform the same job. Plaintiff believed that Edison should only perform one field call, as opposed to three, and that the new and old occupants' accounts should be prorated for the days that they did not occupy the unit. Additionally, plaintiff devised a system that would involve the computer automation of this process.

In November or December of 1990, plaintiff outlined her idea to her supervisors, all of whom appeared to plaintiff to be "enthused and excited about the idea." Plaintiff was told by her supervisors to submit a written proposal of her idea. She then proceeded to research the company policy on improvements and began to compile information regarding her idea, writing her proposal on weekends,

at home in the evenings, and occasionally on breaks
during the day. On January 16, 1991, plaintiff submit-
ted her proposal to Edison's idea improvement com-
mittee. Soon after, the proposal coordinator called
plaintiff and asked her which divisions the proposal
affected, to which plaintiff replied, "all six divisions."

At the time plaintiff submitted her proposal, she
was aware that Edison had a policy entitled "General
Order 207" dealing with employee suggestions.
According to General Order 207, which was part of
plaintiff's employee manual, she could only receive a
maximum of $5,000 for the submission of a proposal
that rendered tangible savings for the company. How-
ever, plaintiff could receive an award for intangible
benefits, as well as an additional award from the
company if the savings it realized were substantially
more than originally anticipated. At some point after
the submission of her idea, plaintiff was told by the
company to remove General Order 207 from her
employee manual and replace it with "Policy EM-10."

In June 1991, after receiving no response from
defendant regarding her proposal, plaintiff discovered
that Edison was using her idea. At that time, plaintiff
was about to process a turn-on of an apartment on
the CIS when she discovered, to her surprise, that the
order was automatically completed. Being upset,
plaintiff expressed concern with her immediate and
general supervisor about the fact that her proposal
had been implemented without her knowledge. Sub-
sequently, plaintiff continued to have discussions with
her supervisor regarding the status of her proposal.
Eventually, on November 1, 1991, plaintiff's supervi-
sor informed her that her proposal had been rejected
because it addressed ideas already under considera-

tion by the company, and therefore, according to company policy, plaintiff was not entitled to compensation.

Plaintiff discussed the rejection documents with her supervisor, as well as her concerns regarding the delay in evaluating her proposal. In response to a memorandum to the company's proposal plan coordinator from plaintiff's supervisor, plaintiff was informed that her proposal would be reconsidered. Subsequently, Edison again rejected her proposal.

Plaintiff brought this lawsuit in September 1992, alleging that Edison had breached its contractual obligation to her. She subsequently filed an amended complaint, alleging several additional counts besides breach of contract, including rescission or other equitable relief, fraud, conversion, and intentional infliction of emotional distress. On Edison's motion for summary disposition, the trial court dismissed all of plaintiff's claims except the claims for conversion and breach of contract. Edison then moved for a rehearing, arguing that plaintiff's contract damages should be limited to $5,000. The trial court denied Edison's motion for a rehearing, reasoning that a question of fact existed regarding the amount of contract damages, if any, that plaintiff could be awarded.

At trial, following the close of plaintiff's proofs, defendant moved for a directed verdict with regard to the contract and conversion claims. The trial court denied the motions. The jury ultimately found that defendant had intentionally and wilfully taken or used plaintiff's personal property, and awarded her $3,384,427 for the enhanced value of that property. Defendant's postjudgment motions for judgment notwithstanding the verdict or remittitur were denied by

the trial court. Defendant now brings this appeal, and we reverse.

On appeal, defendant argues that plaintiff's submission of an idea pursuant to the employee suggestion plan did not give rise to a property interest that was subject to a conversion cause of an action. We agree. In Michigan, conversion is defined generally as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). See also *Trail Clinic, PC v Bloch*, 114 Mich App 700, 705; 319 NW2d 638 (1982). "The gist of conversion is the interference with control of the property." Prosser & Keeton, Torts (5th ed), § 15, p 102.

> What property may be the subject of an action for conversion was at first determined on the basis of the fiction of losing and finding. Any tangible chattel could be lost and found, and so could be converted. . . .
>
> Intangible rights of all kinds could not be lost or found, and the original rule was that there could be no conversion of such property. But this hoary limitation has been discarded to some extent by all of the courts. The first relaxation of the rule was with respect to the conversion of a document in which intangible rights which were merged, so that the one became the symbol of the other—as in the case of a promissory note, a check, a bond, a bill of lading, or a stock certificate. This was then extended to include intangible rights to which a tangible object, converted by the defendant, was highly important—as in the case of a savings bank book, an insurance policy, a tax receipt, account books, or a receipted account. In all of these cases, the conversion of the tangible thing was held to include conversion of the intangible rights and to carry damages for it. The final step was to find conversion of the rights themselves where there was no accompanying conversion of anything tangible—as, for example, where a corporation

refuses to register a transfer of the rights of a shareholder on its books. [*Id.* at 90-91 (citations omitted).]

The doctrine of conversion has not extended beyond the kind of intangible rights that are customarily merged in, or identified with, some document or other tangible property. *Id.* at 92. Prosser and Keeton acknowledge, however, that "[t]here is perhaps no very valid and essential reason why there might not be conversion of . . . an idea, or 'any species of personal property which is the subject of private ownership.'" *Id.*, quoting *Vaughn v Wright*, 139 Ga 736; 78 SE 123 (1913). Thus, plaintiff's idea could be subject to conversion if she could establish an exclusive right of ownership in the idea.

Michigan appellate courts have held that certain intangible property can be the subject of a conversion action. See, e.g., *Warren Tool Co v Stephenson*, 11 Mich App 274, 276; 161 NW2d 133 (1968) (negotiable instrument); *Tuuk v Andersen*, 21 Mich App 1, 13; 175 NW2d 322 (1969) (right to lease a machine); *Miracle Boot Puller Co, Ltd v Plastray Corp*, 57 Mich App 443, 451; 225 NW2d 800 (1975) (patent right). Notably, in each of these cases, the plaintiff's ownership interest in intangible property was represented by or connected with something tangible. Here, although plaintiff expressed her idea for an automated turn-on/disconnect process in written form, she did not thereby transform the idea into intangible property that was subject to private ownership.

An idea is usually not regarded as property because our concept of property implies something that can be owned and possessed to the exclusion of others. To protect an idea under a property theory requires that the idea possess property-like traits. Courts consider the elements of novelty or

originality necessary for a claim of "ownership" in an idea or concept. These elements distinguish protectable ideas from ordinary ideas that are freely available for others to use. It is the element of originality or novelty that lends value to the idea itself. [*Reeves v Alyeska Pipeline Service Co*, 926 P2d 1130, 1143 (Alas, 1996) (citation omitted).]

In *Joyce v General Motors Corp*, 49 Ohio St 3d 93; 551 NE2d 172 (1990), the Supreme Court of Ohio examined a case factually similar to the one at bar. There, the plaintiff submitted an idea pursuant to the defendant's employee suggestion plan. Under the plan, a suggestion committee decided whether the suggestions were eligible for awards and determined the amount of an award should one be given. *Id.* at 93. The plaintiff's suggestion was ultimately rejected because a duplicate suggestion allegedly had been turned in on the same day. *Id.* The plaintiff subsequently sued the defendant on the grounds that his ideas had been wrongfully appropriated. *Id.* The *Joyce* Court rejected the concept that an "idea" can be considered property that is protected under the law:

In *Gottschalk v Benson* [409 US 63, 67-71; 93 S Ct 253; 34 L Ed 2d 273 (1972)], the United States Supreme Court stated that ideas themselves are not subject to individual ownership or control. They do not rise to the level of property and are not in themselves protected by law . . . . The law does not favor the protection of abstract ideas as property of the originator. "An idea should be free for all to use at least until someone is able to translate such idea into a sufficiently useful form that it may be patented (trademarked) or copyrighted." . . . In *Puente v President & Fellows of Harvard College*, [248 F2d 799, 802 (CA 1, 1957)], the court indicated that an idea which is not in a patented (trademarked) or copyrighted form is not protected "unless it is acquired and used under such circumstances that the

law will imply a contractual or fiduciary relationship between the parties." [*Joyce, supra* at 96.]

The *Joyce* court ultimately held that ideas are not the property of anyone unless expressed in a legally protected manner, and the plaintiff had not expressed her idea in such a manner.[1] *Id.* Moreover, the *Joyce* court found that the public disclosure of the plaintiff's ideas made them available to all and operated to deprive the plaintiff of any further rights in them. *Id.* at 96-97. See also *Matzan v Eastman Kodak Co,* 134 AD2d 863; 521 NYS2d 917 (1987); *Bloom v Hennepin Co,* 783 F Supp 418 (D Minn, 1992); *HJ, Inc v Int'l Telephone & Telegraph Corp,* 867 F2d 1531 (CA 8, 1989); *GS Rasmussen & Associates v Kalitta Flying Service, Inc,* 958 F2d 896, 902-903 (CA 9, 1992).

Here, plaintiff has not established any ownership interest in the idea of automated turn-on/disconnect policies. Although she may have expended significant effort in formulating and drafting her proposal, her own expert witness at trial testified on cross-examination that the idea was neither novel nor unique. Thus, we hold that plaintiff's idea did not constitute property subject to a conversion cause of action. However, to the extent that plaintiff seeks compensation for formulating, drafting, and submitting her idea pursuant to defendant's employee suggestion program, rather than for the idea itself, she has stated a breach of contract claim. Although the

---

[1] Plaintiff argues that the *Joyce* court suggests that if a plaintiff's idea has been developed in a confidential relationship, it may be afforded legal protection by way of an "implied contract or implied fiduciary relationship." Yet, in this case, because plaintiff submitted her idea pursuant to a contractual relationship with her employer, no contract need be implied pursuant to *Joyce.*

jury found no breach of contract existed in this case, we believe that the jury might have found differently on this claim had the conversion claim not been erroneously presented. Accordingly, we reverse and remand for a new trial on plaintiff's breach of contract claim only.

In the event that the trier of fact determines on retrial that a breach of contract occurred, the question of the extent of plaintiff's damages must also be determined. Employee suggestion programs, such as the one in this case, have been viewed by courts as presenting continuing offers to employees to develop new and cost-saving ways for a company to perform. When an employee submits a suggestion, that employee is deemed to have accepted the employer's offer and a valid and enforceable contract is created. *Carlini v United States Rubber Co*, 8 Mich App 501, 503; 154 NW2d 595 (1967). See also *Raybestos-Manhattan, Inc v Rowland*, 460 F2d 697, 700 (CA 4, 1972). In this case, a question of fact exists whether the compensation terms of the parties' contract included those set forth in General Order 207, in effect at the time plaintiff originally submitted her proposal, or Policy EM-10, in effect at the time that Edison reevaluated plaintiff's proposal following original rejection. Under ¶ 9 of General Order 207, plaintiff would be entitled to a maximum of $5,000 for *tangible* savings to Edison as well as an award for "significant" *intangible* benefits realized by defendant. Moreover, pursuant to ¶ 10 of General Order 207, an "additional award" would be available if savings after one year of implementation were "substantially more than originally estimated." On the other hand, under Policy EM-10, plaintiff would be entitled to fifteen

percent of Edison's "net actual savings from the first 2 years of operation of the new idea." In the event that it is determined that Edison breached its contract with plaintiff, the trier of fact must next determine which of the above policies governed the amount of compensation due plaintiff.

Reversed and remanded for a new trial.

A. T. DAVIS, J., concurred.

WHITE, J. *(concurring in part and dissenting in part).* I do not agree with the majority's conclusion that plaintiff's plan was a mere idea not subject to private ownership giving rise to a property interest capable of conversion, or with its characterization of plaintiff's proposal as simply presenting "the idea of automated turn-on/disconnect policies." Rather, as the trial court ruled on defendant's motion for a directed verdict, plaintiff's four-page typewritten proposal was detailed, specific, and concrete, and was not merely an idea. The proposal set forth in detail how the process of disconnects and turn-ons could be automated using the Customer Information System. Although defendant was investigating methods to reduce field service calls, plaintiff's proposed methods were not included in the pilot projects, but were, in substantial measure, ultimately implemented by defendant. These proposed methods were reduced to writing, were the product of plaintiff's labor, and were sufficiently specific to constitute a detailed plan subject to private ownership. Further, defendant's employee suggestion plan did not provide that all suggestions submitted pursuant to the plan became the property of defendant, that defendant's decisions under the plan were

final, or that an employee's sole remedy was to pursue rights under the plan.

The question what damages may appropriately be recovered under the circumstances of this case is a separate question that the majority's disposition makes it unnecessary to reach.

Notwithstanding my conclusion that plaintiff's suggestion was subject to private ownership, I agree that a new trial is warranted. The jury's verdicts on the contract and conversion counts are inconsistent. As defendant correctly observes, the contract includes a provision under the heading "Company Action Duplicating Rejected Proposals" that states that an award should be considered if the company's action is influenced in any way by the proposal, and a provision under the heading "Matters Under Study By The Company" that states that proposals regarding problems under study may be reviewed for an award if they benefit the action being considered.[1] Given these aspects of the contract, the jury could not consistently find conversion but no breach of contract.

---

[1] I recognize that the inconsistent verdicts may in large measure be due to the manner in which the case was tried. These provisions of the contract were not highlighted to the jury. The provisions tended to support plaintiff's breach of contract claim; but plaintiff may have chosen to highlight her conversion claim. Defendant, on the other hand, sought to defeat both claims.