# STATE OF MICHIGAN

# COURT OF APPEALS

SALVATORE D'ANNA, d/b/a MARKETING
COMPANY, LINA D'ANNA, and D. S.
MARKETING, L.L.C.,

        Plaintiffs/Counter-
        Defendants/Third-Party Defendants,

v

DENIS FURGAL, JUDY FURGAL, and
FURGAL CONTRACTING COMPANY,

        Defendants/Counter-
        Plaintiffs/Cross-Plaintiffs-
        Appellees,

and

PAUL E. MUXLOW, d/b/a MUXLOW, INC.,
a/k/a RED KARPET KEIM-MUXLOW,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff,

and

LAPEER SAND & GRAVEL COMPANY and
FURGAL LANDSCAPING COMPANY,

        Third-Party Plaintiffs-Appellees

and

SPIRO TRAJCEVSKI, FIRST DEVELOPMENT
COMPANY OF MICHIGAN, INC., FIRST
DEVELOPMENT OF PORT HURON, L.L.C.,
CHURCHILL SAND & GRAVEL, L.L.C., and
TWIN LAKES VENTURES, L.L.C.,

        Cross-Defendants/Third-Party

UNPUBLISHED
September 17, 2015

No. 320652
Lapeer Circuit Court
LC No. 05-035400-CZ

Defendants-Appellants.

Before: Ronayne Krause, P.J., and Gleicher and Stephens, JJ.

Per Curiam.

The instant appeal arises out of a 2004 land contract between plaintiffs and the Furgal defendants under which plaintiffs allegedly received rights to a gravel pit. Plaintiffs alleged that the Furgal defendants breached the land contract and that the Muxlow defendants were responsible for making misrepresentations as the Furgal defendants' agent. The Furgal and Muxlow defendants brought a counterclaim against plaintiffs for themselves violating the land contract, and they, along with Lapeer and Furgal Landscaping Company, brought a third-party claim against the Trajcevski entities for allegedly impermissibly mining and removing aggregate from the pit. In relevant part, the trial court determined that on the facts of the case, the Furgals' conversion claim against Trajcevski was not barred by either the economic loss doctrine or Trajcevski's status as a disclosed agent of plaintiff D'Anna. After a bench trial as to damages and attorney fees, the trial court found Trajcevski liable for certain royalties under the land contract and awarded treble damages in the amount of $4,586.37, offset by $1,412.00 previously garnished, and $15,000.00 in attorney fees. Trajcevski appeals and we affirm.

We review a trial court's grant or denial of a motion for summary disposition de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "We review the trial court's findings of fact in a bench trial for clear error and conduct a review de novo of the court's conclusions of law." *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). The interpretation and determination of the meaning of an order of a court is reviewed de novo as a question of law. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008). Likewise, we review de novo questions of statutory interpretation. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175, amended on other grounds 468 Mich 1216 (2003).

Trajcevski first argues that the trial court orally denied the Furgals' initial motion for summary disposition on the record, stating that a question of fact existed as to Trajcevski's personal liability. "The rule is well established that courts speak through judgments and decrees, not their oral statements or written opinions." *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977). However, an appellate court is not bound by the label a trial court gives to a document, because that "would elevate form over substance." *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 220 n 4; 625 NW2d 93 (2000). The trial court's order stated that the Furgal entities' motion was granted against Trajcevski, and Trajcevski's motion was denied, "for the reasons stated on the record." Trajcevski presumably relies on the following somewhat opaque passage from the trial court's bench ruling on March 4, 2013:

> Therefore, it is the holding of this Court that the Furgals have presented sufficient evidence to permit the trier of fact, a reasonable jury, to find Mr. Trajcevski liable for statutory conversion. Further, their motion for summary disposition is

-2-

considered and denied because, as the Court earlier stated, the Court determines that is [sic] a jury issue for the trier of fact.

The trial court also held on the same record that Trajcevski's motion for summary disposition was denied on the apparent grounds that it found the economic loss doctrine to be of dubious or nonexistent viability as applied to "intentional torts, particularly conversion."

The trial court's ruling could have been more detailed. However, it is clear from the pleadings and papers filed prior to the ruling that the question at issue was Trajcevski's personal liability to the Furgal entities for conversion. The Furgal entities did not argue that any of Trajcevski's other related entities were so liable and any claims against them, or indeed any other claims, appear to have been tacitly abandoned. The trial court's order can only be interpreted as a ruling that it rejected Trajcevski's arguments regarding his liability for conversion either due to his agency status or to the economic loss doctrine. Consequently, the trial court's finding of a question of fact related not to Trajcevski's *liability*, but rather the Furgal entities' request for *damages*.

Trajcevski next contends that the trial court should not have found him liable for conversion. Specifically, Trajcevski argues that the trial court erroneously confused contractual liability for the royalties due under the land contract with tort liability for conversion; and that because the Furgal entities did not have an exclusive right to the aggregate materials at the relevant times, the tort of conversion cannot apply. We disagree.

Conversion is an intentional tort, albeit one that can be committed unwittingly, entailing a wrongful exercise of dominion, control, usage, or delivery of some personal property belonging to another but in the defendant's possession. *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 13-14, 18; 779 NW2d 237 (2010); *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). Intangible personal property such as royalties can be converted, but generally only if the intangible property is in some way linked with tangible property. *Miracle Boot Puller Co, Ltd v Plastray Corp*, 57 Mich App 443, 450-451; 225 NW2d 800 (1975); *Sarver v Detroit Edison Co*, 225 Mich App 580, 586-588; 571 NW2d 759 (1997). Michigan additionally provides a statutory remedy for conversion in MCL 600.2919a, separate from and additional to common law conversion. *Dep't of Agriculture*, 485 Mich at 9-10 ; *Aroma Wines & Equip, Inc v Colombian Distribution Servs*, ___ Mich ___, ___; ___ NW2d ____ (2015) (Docket Nos. 148907 and 148909), slip op at 2. That statute provides, *inter alia*, that the defendant must employ "the converted property for some purpose to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines & Equip*, ___ Mich at ___; slip op at 2.

Trajcevski argues that the Furgals are not entitled to a conversion claim because they did not have exclusive ownership of the land from which the aggregate was removed. Trajcevski misapprehends the law. A plaintiff cannot maintain an action for conversion if the defendant has a greater right to possess the property than the plaintiff does. *Rohe Scientific Corp v Nat'l Bank of Detroit*, 133 Mich App 462, 468; 350 NW2d 280 (1984), mod on reh on other grounds 135 Mich App 777 (1984). Likewise, a person who has a privilege to dispose of the property cannot be liable for converting it. *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960). Accordingly, the plaintiff must establish an ownership interest in the property and a

superior right of possession for common-law conversion. See also *Thomas v Watt*, 104 Mich 201, 207; 62 NW 345 (1895) (a trover action required that plaintiff prove "[p]roperty in herself, and a right of possession at the time of the conversion"); *Hance v Titabawassee Boom Co*, 70 Mich 227, 231; 38 NW 228 (1888) ("[t]o authorize a recovery in an action of trover, the plaintiff must prove his ownership, absolute or qualified, of the property"). However, each person having an interest in wrongfully converted property has a right of action for conversion. *Huellmantel v Vinton*, 116 Mich 621, 623; 74 NW 1004 (1898). The same result should follow for statutory conversion. Consequently, the Furgals' ownership need not be exclusive, and nothing in *Sarver*, upon which Trajcevski relies, holds otherwise.

The Furgal entities contended that even though they had not recovered possession of the real property when the aggregate was removed, they nevertheless owned it and the land contract still entitled them to royalties associated with the removed aggregate. "[U]nder a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v American Acceptance Mtg Corp (On Rehearing)*, 469 Mich 608, 614; 677 NW2d 829 (2004). Royalty transactions are "a mixture of various elements and thus difficult to characterize in a consistent conceptual manner." *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 481; 373 NW2d 730 (1985). A royalty is nevertheless commonly understood to be "compensation paid to the owner of certain types of property, such as intangible property or natural resources, for the use of that property." *Kelly Servs, Inc v Dep't of Treasury*, 296 Mich App 306, 314; 818 NW2d 482 (2012). Where natural resources are removed from land, they become personal property, and a property right for a person's royalty interest may attach to the severed natural resources. See *Young v Young*, 709 P2d 1254, 1257 (Wyo, 1985) (legal title to royalties on oil and gas produced and marketed was acquired by assignment).

The land contract provided that the Furgals would convey the premises to Salvatore if Salvatore made all payments and satisfied all conditions of the land contract. It entitled the purchaser to possession of the premises as long as there was no default. However, if a default was not cured within 45 days,

> after notice of intent to forfeit the contract is served upon Purchaser Seller shall have the right of possession of the subject property, and to receive all rents and profits relative to the subject property from and after the date set in said notice for curing such default and such right of Seller shall continue during any period that forfeiture or foreclosure proceedings are pending and during any period of redemption.

Regarding royalties, the land contract also provided that

> In addition to any other payments provided herein and until all principal and interest is fully paid, Purchaser shall pay Seller a royalty of $.25 per cubic yard of aggregate which is removed from the property. Purchaser shall provide Seller with such records as Seller deems appropriate to calculate the amount of aggregate removed on a quarterly basis commencing three months after the date of closing and each quarter thereafter. The royalty payment shall be made each quarter commencing three months from the date of closing.

There was no evidence that the Furgals' status as the legal title owner of the real property changed at any time relevant to this case. Therefore, when the pertinent aggregate was removed from the ground and became personal property, the Furgals were still the owners. They also had a property interest in the royalties that attached to the aggregate removed from the ground. Therefore, they established the requisite ownership element for conversion predicated on the royalties. They also established the requisite possessory interest even though their royalty interest in the severed aggregate is not itself tangible. The date the Furgals recovered possession of the property is only relevant to Salvatore's right or privilege to remove the aggregate.

In sum, it is immaterial to the Furgals' conversion claim whether they had exclusive possession of the real property, including the gravel pit, at the time of the alleged conversion. The trial court did not expressly address each element of conversion under MCL 600.2919a in its summary deposition ruling, but this Court will not reverse where the trial court reaches the right result. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000). Because there was no genuine issue of material fact shown with respect to the Furgals' property interest in the royalties attached to the aggregate removed from the gravel pit, Trajcevski has not provided a basis for disturbing the trial court's summary disposition ruling.

Trajcevski argues that he cannot be held personally liable for the unpaid royalties because he was undisputedly acting as a disclosed agent for the D'Annas. Trajcevski correctly states the general rule, which is that a disclosed agent is generally not liable to a third party with whom the agent contracts on behalf of the agent's principal. *Nat'l Trout Festival, Inc v Cannon*, 32 Mich App 517, 521; 189 NW2d 69 (1971); *Huizenga v Withey Sheppard Assoc*, 15 Mich App 628, 633; 167 NW2d 120 (1969). However, actionable fraud is a notable exception to that general rule. *Huizenga*, 15 Mich App at 633, citing *Van Wie v Fidelity Trust Co*, 254 Mich 108-110; 235 NW 863 (1931). A party's status as an agent will likewise not insulate that party from liability for a tort in which the party participated as a wrongdoer. *Charvat v Gildemeister*, 222 Mich 286, 289; 192 NW 674 (1871). In other words, just because a party is an agent does not mean the party can act with impunity; that party's *own* intentionally tortious conduct remains that party's own responsibility. See *Dep't of Agriculture*, 485 Mich at 17 n 39, quoting 2 Restatement Agency, 3d, § 7.01, p 115.

Because the action against Trajcevski was for conversion, and not breach of the land contract, Trajcevski's argument that he cannot be liable should be rejected. The material issue is whether the elements for conversion under MCL 600.2919a were established.

Trajcevski further argues that the economic loss doctrine precludes the Furgals' conversion claim. The economic loss doctrine has been invoked by Michigan courts in appropriate cases where a conflict arises from the disparate goals of tort and contract law. *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 523-524; 486 NW2d 612 (1992). The underlying policies of tort and contract law, as well as the nature of the damages, are considered in determining if the economic loss doctrine should bar a tort claim. *Id*. at 531. "In order for the economic loss doctrine to bar recovery in tort, there must be a transaction that provides an avenue by which the parties are afforded an opportunity to negotiate and protect their respective interests." *Quest Diagnostics, Inc v MCI WorldCom, Inc*, 254 Mich App 372, 381; 656 NW2d 858 (2002). The doctrine generally precludes a tort action unless the plaintiff could maintain the

action even if there was no contractual relationship. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 47-50; 649 NW2d 783 (2002).

This Court has recognized both a small and limited exception to the economic loss doctrine in Michigan and an emerging trend by courts to create an exception to the economic loss doctrine "for a select group of intentional torts." *Huron Tool & Engineering Co v Precision Consulting Servs, Inc*, 209 Mich App 365, 370; 532 NW2d 541 (1995). This Court declined to hold that the economic loss doctrine would preclude a fraud claim, but determined that fraud in the inducement was not precluded by the existence of a contractual relationship "where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Id*. at 372-373. The trial court's extrapolation, based on cases that were decided outside of Michigan and therefore not binding on us, that the economic loss doctrine does not apply to *any* intentional torts is unwarranted under Michigan law. We need not decide whether Michigan should, or endeavor to prognosticate whether Michigan will, adopt such a wholesale exception, because under the circumstances of this case, the trial court reached the correct result.

Although a contract was indeed involved in the factual underpinnings of this matter, the land contract was between the D'Annas through Trajcevski as their agent, not with Trajcevski himself. The Furgals' claim against Trajcevski for his *own* act of conversion entails the breach of a duty other than a contractual one. The land contract establishes ownership and possession rights, as well as an evidentiary basis for the Furgals to establish the value of converted property. Because Trajcevski had no personal contract with the Furgals the economic loss doctrine has no bearing on his tort liability in this matter.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens