*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER SOULLIERE, SOULLIERE
DECORATIVE STONE, INC., MICHIGAN SKID
LOADER, INC., STONE CITY, INC.,
SOULLIERE'S STONE CITY, INC., SOULLIERE
WALL STONE, INC., PROTEK PRODUCTS, INC.,
SOULLIERE LEASING, LLC, and SOULLIERE
REALTY, LLC,

UNPUBLISHED
October 29, 2020

Plaintiffs-Appellees,

v

No. 349428
Macomb Circuit Court
LC No. 2013-001334-CB

FRANK BERGER, DSSC HOLDINGS, LLC, DSSC
REALTY, LLC, STONESCAPE DESIGN, LLC,
STONESCAPE SUPPLY, LLC, MACOMB SKID
LOADER, LLC, LYRIC TECHNOLOGY, LLC,
DAWN SURMA, MATTHEW ESCH, TIM SHEA,
JAMES RISNER, NICHOLAS MAIORIANA,
BRIAN ROBERTS, DAVID ATKINSON, and
CAROL ANN SOULLIERE-KRAFT,

Defendants-Appellants.

Before: BOONSTRA, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

In this action involving a dispute over business assets, the parties agreed to submit their claims to arbitration. The arbitrator found that plaintiffs proved a claim for common-law conversion and awarded plaintiffs damages of $120,750, plus costs, fees, and judgment interest. Defendants moved to vacate or modify the award, and the parties stipulated to remand the matter to the arbitrator for clarification of the award. After the arbitrator issued a supplemental opinion, defendants again moved to vacate the arbitrator's award. The trial court denied defendants' motion, and defendants now appeal as of right. We affirm in part, but remand for clarification regarding which defendants are liable for the conversion claim.

# I. FACTUAL BACKGROUND

Plaintiffs consist of plaintiff Roger Soulliere (Roger) and his related business entities (the Soulliere Companies). Roger and his companies successfully operated for approximately 30 years, primarily involving the installation of stone and brick landscaping, including several high-profile projects. In 2012, the Soulliere Companies experienced financial problems when loans became due. As a result, First State Bank of East Detroit (the Bank) acquired the rights to certain assets owned by plaintiffs, but plaintiffs continued to operate their respective businesses.

In 2013, defendant Frank Berger (Berger), who formerly worked for plaintiffs, led a group of investors (the Stonescape Investors) who started a competing landscaping business. Other individual defendants named in this action include individuals who formerly worked for plaintiffs, but later joined the newly formed corporate defendant entities. In March 2013, the Stonescape Investors acquired assets originally owned by plaintiffs from the Bank. Notably, the assets that plaintiffs had transferred to the Bank did not include certain intangible property, such as websites and customer lists. While plaintiffs' loan agreements included intangible assets as collateral, plaintiffs reached an agreement with the Bank that plaintiffs could retain the intangible assets. In January 2013, however, plaintiffs discovered that they were unable to access their customer information, which was stored in a digital format, and they also discovered that information from their websites had been copied into the websites of defendants' competing businesses. Plaintiffs filed this action alleging that defendants converted plaintiffs' intangible property to their own use.

After the parties agreed to submit their claims to arbitration, the arbitrator found that plaintiffs proved their claim for common-law conversion of the intangible property and ordered defendants to pay damages of $120,750, along with costs, fees, and judgment interest. After defendants moved to vacate the arbitrator's award, the trial court remanded the matter to the arbitrator for clarification of the award. On remand, after the arbitrator issued a supplemental decision, defendants again moved to vacate the arbitrator's award. The trial court denied defendants' motion. Defendants now appeal.[1]

# II. COMMON-LAW CONVERSION

Defendants argue that the arbitrator exceeded his authority by committing an error of law by concluding that defendants could be liable to plaintiffs for conversion of property that plaintiffs had surrendered to the Bank. Because the arbitrator did not find that plaintiffs had surrendered the property at issue to the Bank, we reject this claim of error.

This Court reviews de novo a trial court's decision to uphold or vacate an arbitration award. *City of Ann Arbor v American Federation of State, Co & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009); *Tokar v Albery*, 258 Mich App 350, 352; 671 NW2d 139 (2003). It is well-settled that courts may not review an arbitrator's factual findings or

---

[1] We note that defendants have filed numerous documents on appeal that were not filed in the trial court. A party is not permitted to expand the record on appeal. MCR 7.210(A); *Amorello v Monsanto Corp*, 186 Mich App 324, 330; 463 NW2d 487 (1990). Accordingly, we decline to consider any documents submitted by defendants that were not presented to the trial court.

decision on the merits. *Mich State Employees Ass'n v Dep't of Mental Health,* 178 Mich App 581, 583; 444 NW2d 207 (1989). In *Hope-Jackson v Washington*, 311 Mich App 602, 613-614; 877 NW2d 736 (2015), this Court summarized a court's authority to review an arbitration award, stating:

> The circuit court's power to vacate a statutory arbitration award is very limited. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991).
>
> > Reviewing courts can only act upon a written record. There is no requirement that a verbatim record be made of private arbitration proceedings, there are no formal requirements of procedure and practice beyond those assuring impartiality, and no findings of fact or conclusions of law are required. Thus, from the perspective of the record alone, a reviewing court's ability to review an award is restricted to cases in which an error of law appears from the face of the award, or the terms of the contract of submission, or such documentation as the parties agree will constitute the record. [*DAIIE v Gavin*, 416 Mich 407, 428-429; 331 NW2d 418 (1982).]
>
> The *DAIIE* Court further explained:
>
> > In many cases the arbitrator's alleged error will be as equally attributable to alleged "unwarranted" factfinding as to asserted "error of law." In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable. [*Id*. at 429.]
>
> To merit vacation of an arbitration award, an error of law must be evident on the face of the award and
>
> > be so egregious, . . . so materially affect the outcome of the arbitration, . . . so plainly demonstrate a disregard of principles fundamental to a fair resolution of the dispute, or . . . so unequivocally generate a legally unsustainable result, that [the erroneous legal conclusion] cannot be said to be within the parties' agreement to arbitrate or the arbitrator's authority. [*Id*. at 429-430.]
>
> "By 'on its face' we mean that only a legal error 'that is evident without scrutiny of intermediate mental indicia' will suffice to overturn an arbitration award" because we may not "engage in a review of an 'arbitrator's "mental path leading to [the] award." ' " *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (quotation marks and citations omitted) (alteration in original).

MCR 3.602(J)(2)(c) allows a court to vacate an arbitration award if "the arbitrator exceeded his or her powers." "Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law." *Miller*

*v Miller,* 474 Mich 27, 30; 707 NW2d 341 (2005). Defendants argue that the arbitrator exceeded his powers by finding them liable for common-law conversion in contravention of controlling principles of law.

"Conversion, both at common law and under the statute, is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' " *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 447; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015). In this case, the arbitrator found that defendants were liable for common-law conversion. The arbitrator described several intangible assets that were converted, including photographs from plaintiffs' website that appeared on the Stonescape investors' websites as their own work product, an exact replica of plaintiffs' stain guide, and an exact replica of an article related to the need to seal brick pavers.

Defendants argue that the arbitrator wrongly concluded that defendants assumed control over plaintiffs' assets before defendants executed an Asset Purchase Agreement with the Bank on March 13, 2013, whereby defendants purchased assets formerly belonging to plaintiffs. Defendants argue that, in the interim, the Bank had control over the Soulliere Companies, and therefore, they could not have converted any assets from plaintiffs in January 2013, as the arbitrator found, given that it was the Bank that owned the intangible assets at that time. We disagree with defendants' claim that the arbitrator committed an error of law.

The arbitrator first found that plaintiffs discovered the conversion of the Soulliere Companies' intangible property in January 2013. The arbitrator stated:

> Roger Soulliere's daughter, non-party Sarah Soulliere ("Sarah"), testified about how the plaintiffs' website brickpave.com—originally registered in 1999 to Roger Soulliere—was updated on February 19, 2013 to show DSSC as the registrant and Berger as the administrative contact with defendant Dawn Surma's email address. See Sarah TR 11.9.17, at 460-463. The Michigan Skid Loader and Soulliere Decorative Stone websites were also updated to change the registrant from Soulliere Decorative Stone to DSSC with Berger and Surma as the administrative and/or technical contacts. *Id*. at 464-466. Sarah testified that plaintiffs started noticing problems with these websites in January of 2013. *Id*. at 470.

The arbitrator explained how these problems also affected plaintiffs' computerized customer data system:

> Upon noticing these issues [with the websites], Roger Soulliere became concerned about the Customer Relationship Management ("CRM") system. The CRM, as described by Berger, is a computerized data tool to manage customer contacts from the call into the company to the sale closing to the satisfaction survey afterward. See Berger TR 12.12.17, at 530-532. It was a "cloud-based" system the plaintiffs had through Microsoft. See Sarah Soulliere TR 11.9.17, at 457-460; see also Berger TR 12.12.17, at 601-602.

On January 23, 2013, Roger Soulliere contacted Jenel Kukla, of TM Group, Inc. which was a Gold Certified Partner for Microsoft Dynamics, explaining that he was locked out of the CRM and that Berger and others who were no longer affiliated with the Soulliere companies still had access to the CRM. See Exhibit 98. Ms. Kukla followed up by email stating that she put in a support ticket with Microsoft to get administrative access to the CRM to remove all users except Roger and Sarah Soulliere. That same day, Carol Soulliere-Kraft emailed Berger to say, "I got the server." See Exhibit 45.

About ten days later, on February 4, 2013, Judy from the TM Group emailed Soulliere to say that someone named Dawn contacted them for assistance in downloading the CRM data. See Exhibit 98. On February 6, Dawn Surma emailed Berger . . . to say, "Just FYI, the Dynamics CRM has been disabled." *Id*.

Emails from Microsoft Customer Support personnel indicate that the CRM password could not be reset for Soulliere until April 4, 2013, and Sarah could not be added as a user until at least April 11, 2013, because only billing administrators could make changes to the subscription. *Id*. Other documents in Exhibit 98 establish that Berger initiated the CRM technology and was the only authorized contact with the TM Group as Soulliere COO. See also Berger TR 12.12.17, at 529-530, 602.

During the arbitration hearing, Berger appeared to testify that he thought he was buying plaintiffs' intangible assets through the Bank, along with other assets. He also denied that defendants caused plaintiffs to be locked out of the CRM system. The arbitrator rejected both of these arguments. The arbitrator relied on the testimony of John Bartley, who testified that no one acting on behalf of the Bank represented to Berger that the intangible assets were included in the Asset Purchase Agreement signed by defendants. On that basis, the arbitrator rejected defendants' claim that their purchase agreement with the Bank included *all* of the Soulliere Companies' assets.

Defendants attempt to characterize the arbitrator's decision regarding conversion of intangible assets as involving an error of law because plaintiffs did not control or own the CRM system, or other assets, between December 2012 to March 2013, but rather the Bank had already assumed control over these assets. In other words, defendants claim they could not have converted any assets that plaintiffs no longer owned or controlled. We reject defendants' argument because the arbitrator never found that plaintiffs surrendered control or ownership of plaintiffs' intangible assets to the Bank before defendant acquired them.

On the contrary, the arbitrator found that plaintiffs were the lawful owners of the intangible assets at issue in this case, including, but not limited to, intellectual property, trade names, e-mail accounts, customer lists and related data, websites, promotional materials, bidding data, telephone numbers, and signage. The arbitrator found that the Bank had the right to seize the intangible assets under the terms of its surrender agreement with plaintiffs, but that the Bank released its lien on those assets, which meant that plaintiffs retained their ownership over the assets. Specifically, the arbitrator stated:

Further, FSB [the Bank] released its lien on the intangible assets in the Surrender Agreement before the Purchase Agreement was executed. Mr. Bartley testified that FSB agreed to release the intangible assets to Soulliere and the Soulliere companies as consideration for the voluntary surrender of the tangible assets. See Bartley TR 10.17.17, at 13-14, 19-20. While DSSC contends that the Soulliere companies failed to perform a condition precedent to its agreement with FSB, the circuit court rejected that argument in its 2016 Opinion and Order, and Mr. Bartley's hearing testimony contradicts it. TR 10.17.17, at 64. Consequently, there is no evidence to support that plaintiffs did not retain the intangible assets after the Surrender Agreement was executed. Because FSB could not sell what it did not own, the intangible assets belong to the plaintiffs.

Thus, the arbitrator specifically found, as a matter of fact, that plaintiffs were still the owners of the intangible assets because plaintiffs' rights to those assets were not transferred to the Bank, despite the terms of the voluntary surrender agreement. Contrary to what defendants argue, the arbitrator did not find that defendants could be liable for converting property over which plaintiffs no longer had ownership or control. Because the arbitrator found that plaintiffs retained ownership over these intangible assets, it was not an error of law to find that defendants could be liable for converting the same.[2]

Defendants also argue that the arbitrator incorrectly calculated plaintiffs' damages for conversion on the basis of their inability to use the CRM system. Defendants did not raise this issue in either of their motions to vacate the arbitrator's award. Accordingly, our review of this issue is limited to plain error affecting defendants' substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

Defendants argue that the arbitrator's calculation of damages for the conversion claim was erroneous because the evidence did not show that defendants were responsible for locking plaintiffs out of the computerized customer data system for the entire first quarter of 2013. According to defendants, there was no evidence that any defendant interfered with plaintiffs' intangible property rights for any more than 14 days. However, the arbitrator found that there was an overall plan by defendants to convert plaintiffs' intangible assets from approximately January 2013 to April 2013. Defendants' disagreement with the arbitrator's decision implicates the arbitrator's resolution of the factual evidence, and the weight given to the evidence. Defendants have not demonstrated an error of law apparent from the face of the award with respect to the arbitrator's calculation of damages. Therefore, we reject this claim of error.

III. INTANGIBLE PROPERTY

Next, defendants argue that the arbitrator erred as a matter of law by ruling that plaintiffs' websites could be converted, despite this property's characterization as intangible property.

---

[2] Moreover, we note that to the extent that defendants are challenging the arbitrator's finding that plaintiffs retained ownership of the intangible assets, that argument implicates the arbitrator's findings of fact. The trial court properly declined to review the arbitrator's factual findings and decision on the merits. *Ann Arbor*, 284 Mich App at 144.

Although the trial court addressed this issue before the case was submitted to arbitration, and the arbitrator addressed this issue in his decision, defendants did not raise this issue in either of their motions to vacate the arbitrator's award, and thus the trial court did not revisit the issue when ruling on defendants' motions to vacate or modify the award. Therefore, this issue was not properly preserved, *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005), and defendants must demonstrate a plain error affecting their substantial rights. *Kern*, 240 Mich App at 336.

A review of the arbitrator's decision shows that the arbitrator correctly applied *Sarver v Detroit Edison Co*, 225 Mich App 580, 585-589; 571 NW2d 759 (1997), to conclude that the websites set up and operated by plaintiffs for years could be the subject of an action for conversion because they were ideas reduced to a legally recognized tangible form. Furthermore, defendants concede that plaintiffs were not awarded any damages for conversion of the websites. Accordingly, any error did not affect defendants' substantial rights. Therefore, defendants are not entitled to appellate relief with respect to this issue.

## IV. EXPERT TESTIMONY

Defendants argue that the trial court should have vacated the arbitrator's decision because, in determining damages, the arbitrator improperly relied on the testimony of plaintiffs' expert, which defendants maintain was inadmissible under MRE 702 and MRE 403. The trial court properly declined to grant relief on the basis of this argument. The problem with defendants' argument is that defendants have not shown that the parties agreed that the arbitrator was bound to follow the Rules of Evidence. In addition, even if the arbitrator was asked to rule on the admissibility of Cech's testimony under the Rules of Evidence, that is not a type of ruling that a court will review.

The order submitting this case to arbitration does not address whether the Rules of Evidence were to apply during the arbitration proceeding. The parties only agreed that the arbitrator would follow MCR 3.602, which does not address whether the Rules of Evidence apply in arbitration hearings. MCR 3.602(A) incorporates provisions in the Uniform Arbitration Act, MCL 691.1681 *et seq.*, which the arbitrator acknowledged. MCL 691.1695(1) of the Uniform Arbitration Act leaves evidentiary issues to the arbitrator:

> An arbitrator may conduct an arbitration in the manner that the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding. The authority conferred on the arbitrator includes the power to hold conferences with the parties to the arbitration proceeding before the hearing and, among other matters, determine the admissibility, relevance, materiality, and weight of any evidence.

Thus, questions regarding the admissibility of evidence are for the arbitrator to decide. *Gozdor v Detroit Auto Inter-Ins Exch*, 52 Mich App 49, 51; 216 NW2d 436 (1974). Absent a showing of fraud or a lack of good faith, the arbitrator's evidentiary rulings are binding. *Id.* Accordingly, the trial court did not err by denying defendants motion to vacate the arbitrator's award on the basis of the arbitrator's consideration of plaintiffs' expert's testimony.

## V.  LIABILITY OF THE PARTIES

In defendants' first motion to vacate the arbitrator's decision, they complained that the arbitrator failed to determine each defendant's liability despite evidence showing that not every defendant participated in the conversion of the assets.  In December 2018, the parties stipulated that the matter should be remanded to the arbitrator "for a clarified award making a decision on counter-plaintiffs' counterclaims which were filed in this case and against which parties the award was entered."  On remand, the arbitrator issued a supplemental opinion addressing only defendants' counterclaims.

We agree with defendants that the arbitrator failed to fully comply with the trial court's remand order by not addressing the issue of the defendants' individual liability for conversion.  It appears from the arbitrator's supplemental opinion that he understood the trial court's remand order to only require reconsideration of the counterclaim.  In his supplemental opinion, the arbitrator characterized that as the "sole issue" for which the matter had been remanded for clarification.  However, defendants had argued that the original award was erroneous in part because the arbitrator failed to determine the liability of each individual defendant despite that not all defendants were participants in the alleged conversion, and the trial court remanded the matter for "a clarified award . . . on counter-plaintiffs' counterclaims which were filed in this case *and against which parties the award was entered*."  The arbitrator did not comply with this latter directive on remand.  Accordingly, we again remand for clarification of the arbitrator's original award with respect to the liability of each defendant.

Defendants' remaining arguments regarding substitution, addition, or dismissal of various parties goes beyond the scope of permissible judicial review of the arbitrator's decision.  To the extent that defendants believed the proper parties were not present for the arbitration, they should have pursued that issue with the arbitrator.  They may not now raise the issue as a ground for setting aside the arbitrator's award because this argument would require this Court to delve into the arbitrator's findings and reasoning, which is beyond the limited scope of judicial review of the arbitrator's decision. See *Hope-Jackson*, 311 Mich App at 613-614.

Affirmed in part and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood